## NEW JERSEY *v.* ANDERSON.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH
CIRCUIT.

No. 49.   Argued October 19, 1906.—Decided December 10, 1906.

The requirement of § 64*a* of the bankruptcy law of 1898 in regard to
preference of taxes is a wide departure from the act of 1867 and prefers
taxes due to any State and not only those due to the State in which
proceedings are instituted.

It is the province of the courts to enforce, not to make, laws; and if a law
works inequality the redress, if any, must be had from Congress, and
arguments directed, not to the construction of the act, but as to the
justice of a method of distribution of assets under the bankruptcy law,
and the hardship resulting therefrom, cannot influence judicial deter-
mination.

Generally speaking, a tax is a pecuniary burden laid upon individuals or
property to support the Government, and § 64*a* of the bankruptcy law
is very broad and covers all taxes, including yearly license fees imposed
by the State on corporations organized under its laws for the privilege
of doing business, whether such business is carried on in that or in other
States.

A State creating a corporation may fix the terms of its existence and

provide that for the continued existence of its franchise it must yearly pay the State certain sums fixed by the amount of its outstanding stock.

While the state court may construe a statute and define its meaning it cannot conclusively determine that which is not a tax to be a tax within the meaning of a Federal statute; that is a Federal question of ultimate decision in this court.

In this case this court reaches independently the same conclusion as that reached by the state court.

Under the bankruptcy act taxes assessed on returns made prior to the adjudication are legally due and owing and entitled to the preference given by § 64a although not collectible until after the adjudication.

137 Fed. Rep. 858, reversed.

This is an appeal from the judgment of the Circuit Court of Appeals for the Seventh Circuit, affirming the order of the District Court, which affirmed the finding of the referee in bankruptcy, denying to the State of New Jersey a preference for alleged franchise taxes from the estate of a bankrupt, the Cosmopolitan Power Company.

On December 21, 1903, the claim for the State was filed, under the provisions of section 64a of the bankruptcy law. The claim is set forth as follows:

| | |
|---|---|
| Tax—1902.............................. | $5,750 00 |
| Interest to October 15, 1903................ | 891 25 |
| Costs on injunction proceedings, because of non-payment of taxes........................ | 26 15 |
| Tax—1903................................ | 2,500 00 |
| Interest to October 15, 1903................ | 87 50 |
| | $9,254 90 |

The Cosmopolitan Power Company is a corporation organized under the laws of the State of New Jersey on April 30, 1900, for the purpose of dealing in engines, machines, etc. By its charter it had power to do business in any State or Territory of the United States. While it had its principal office in the State of New Jersey, located under the terms of its certificate of incorporation, it had no property in that State, and conducted its business in the State of Illinois.

The capital stock of the corporation on January 1, 1902, was forty millions of dollars, of which there were ten millions

outstanding. On May 13, 1902, its capital stock, pursuant to the laws of New Jersey, was reduced to $2,500,000. The company was adjudicated a bankrupt on April 23, 1903, upon an involuntary petition filed in the District Court for the Northern District of Illinois.

On November 7, 1902, the state board of assessors of New Jersey, the company having failed to make return, levied an assessment for the license or franchise tax in question for the year 1902 in the sum of $5,750.00. On June 1, 1903, there was assessed against the company for the year beginning January 1, 1903, a similar tax on outstanding capital stock in the sum of $2,500.00, in accordance with the return of the company filed on May 1, 1903.

On February 12, 1904, the State of New Jersey filed its motion before the referee for the payment of said taxes as a preferential debt. The referee disallowed the 1903 tax altogether, and allowed the 1902 tax as a general claim against the estate for the sum of $4,945.08. This reduction was made from the assessment for the year 1902, because the state board had made the assessment upon the basis of $40,000,000 of outstanding capital stock, whereas, in fact, only $10,000,000 was then issued and outstanding, upon which basis the referee made the allowance. The District Court affirmed the order of the referee. Upon appeal to the Circuit Court of Appeals that court modified the judgment of the District Court so as to allow the taxes claimed for the year 1903, as a general debt, and in other respects affirmed the District Court. 137 Fed. Rep. 858. The case was then brought here.

*Mr. Edward D. Duffield,* with whom *Mr. Levy Mayer* and *Mr. Robert H. McCarter* were on the brief, for appellant:

The claim of the appellant is a tax within the meaning of the bankruptcy act and is entitled to priority as such. *Tennessee* v. *Whitworth,* 117 U. S. 129, 136; *State* v. *Evening Journal Assn.,* 47 N. J. L. 36; *State Board of Assessors* v. *Central R. R. Co.,* 48 N. J. L. 146; *Standard Cable Co.* v. *Attorney General,*

46 N. J. Eq. 270; *Pipe Line Co. v. Berry*, 52 N. J. L. 308, 311, *Trenton Savings Fund* v. *Richards*, 52 N. J. L. 156; *Honduras Commercial Co.* v. *State Board of Assessors*, 54 N. J. L. 278; *Lumberville Bridge Co.* v. *Assessors*, 55 N. J. L. 529; *State* v. *Board of Assessors*, 61 N. J. L. 461; *Hancock, Comptroller*, v. *Singer Mfg. Co.*, 62 N. J. L. 289; *Re Mutual Mercantile Agency*, 8 Am. Bank. Reps. 435; *Myers* v. *Campbell*, 64 N. J. L. 186; *Ches. & O. Ry. Co.* v. *Atlantic Transp. Co.*, 62 N. J. Eq. 751; *Mayor of Newark* v. *State Board*, 51 Atl. Rep. 67; *Arimex Cons. Copper Co.* v. *State Board*, 54 Atl. Rep. 244; *Hardin* v. *Morgan*, 70 N. J. L. 484; *W. U. Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *Massachusetts* v. *W. U. Tel. Co.*, 141 U. S. 40, 45; *Wilmington R. R. Co.* v. *Reid*, 13 Wall. 264; *Atlantic & Pacific Tel. Co.* v. *Philadelphia*, 190 U. S. 160; *Western Union Tel. Co.* v. *Missouri*, 190 U. S. 412; 14 Am. & Eng. Ency. of Law, 2d ed., 6; 27 Am. & Eng. Ency. of Law, 2d ed., 578, 932; *I. C. R. R. Co.* v. *Decatur*, 147 U. S. 190, 199; *City of Camden* v. *Allen*, 26 N. J. L. 398; *First Nat. Bank* v. *Aultman, Miller & Co.*, 12 Am. Bank. Reps. 12; 2 Cook on Corporations, 5th ed., 561. *Re United States Car Co.*, 60 N. J. Eq. 514; *Re Danville Rolling Mill Co.*, 121 Fed. Rep. 432, distinguished.

*Mr. Horace Kent Tenney*, with whom *Mr. Frederick D. Silber* was on the brief, for appellee, submitted:

The claim is not entitled to any priority. The proper construction of § 64a requires that only such taxes be paid as priorities as could be collected from property within the jurisdictional limits of the taxing body at the time the petition was filed. Said section does not provide for the payment of taxes due all States, counties, etc., but due *the* State.

Both the language of the section and the history of the legislation plainly shows that such intention was in the mind of Congress.

The license fee or franchise tax in question is not a tax, according to the decisions of the courts of New Jersey, and other courts. *Re U. S. Car Co.*, 60 N. J. Eq. 514; *Re Ott*, 2

A. B. R. 637; *Re Danville Rolling Mill Co.*, 10 A. B. R. 327; *Re Aultman, Miller & Co.*, 12 A. B. R. 12; *North Jersey Street Ry. Co.* v. *Mayor of Jersey City*, 63 Atl. Rep. 83; 1 Cooley on Taxation, 6; *Singer Mfg. Co.* v. *Heppenheimer*, 58 N. J. L. 634; *Hancock* v. *Singer Mfg. Co.*, 62 N. J. L. 289; *Lumberville Bridge Co.* v. *Assessors*, 55 N. J. L. 537; *American Smelting & Refining Co.* v. *People*, 82 Pac. Rep. 531.

The license fee for 1902 never became a valid charge, because the board of assessors had no right under the statute to levy it in November. The statute requiring the levy in June is mandatory and not directory. The court will not give priority to an allowance that never should have been made.

Regardless of any priority, the reduction of the claim for 1902 was proper. The District Court had the right to investigate the legality and amount of the tax for 1902, and to reduce it, under § 64*a*, and the board of assessors had no power to make the charge on any capital stock not issued and outstanding. *Trenton Heat & Power Co.* v. *State Board of Assessors*, 63 Atl. Rep. 1005; *Arimes Copper Co.* v. *State Board*, 69 N. J. L. 121; *Peoples Investment Co.* v. *Assessors*, 37 Vroom, 175.

The claim for 1903 should be disallowed, because said claim was not in existence and did not constitute a debt, at the time the bankruptcy petition was filed, and was not then a tax legally due and owing. *Re Aultman, Miller & Co.*, 12 A. B. R. 12; *Emmerman* v. *Ohio Steel & Iron Co.*, 13 A. B. R. 40; and see forms of this court in bankruptcy, Nos. 31 to 36.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The provisions of the bankrupt law governing the payment of taxes are found in section 64*a*, act of 1898 (30 Stat. 563, U. S. Comp. Stat. 1901, p. 3447), which reads:

"SEC. 64*a*. The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United

States, State, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

The statute of the State of New Jersey (Gen. Stat. 1895, §§ 251, 252, 257, 258, 260), by its title undertakes to provide for the imposition of state taxes upon certain corporations and for the collection thereof. It requires the corporation to make return to the state board of assessors on or before the first Tuesday in May of each year and to pay an annual license fee or franchise tax of a certain per cent on its capital stock issued and outstanding on January 1 of each year, up to and including $3,000,000; a different per cent on sums in excess of $3,000,000, and not exceeding $5,000,000, and on outstanding capital stock exceeding $5,000,000, $50 per million or any part thereof. In case the corporation shall fail to make return the state board shall ascertain and fix the amount of the annual license fee, or franchise tax, and shall report to the comptroller on or before the first Monday in June the basis and amount of the tax as returned by each company to, or ascertained by the board, which shall then become due and payable, and it shall be the duty of the state treasurer to receive the same. If the tax remains unpaid on July first after the same becomes due it shall thenceforth bear interest at the rate of one per cent per month. That the tax shall be a debt due from the company to the State, for which it may maintain an action at law for recovery thereof, after the same shall have been in arrears for the period of one month, and the tax shall be a preferred debt in case of insolvency, and in cases of arrears for three months the State may apply for an injunction to restrain the company from exercising its corporate franchise; and that if any corporation shall be delinquent for two years its charter shall be void, unless further time be given for the payment of taxes.

It is contended for the appellee that these provisions do not entitle the State to the payment of its claim as a preferred tax within the meaning of the bankrupt act. It is insisted, in the first place, that a proper construction of the act of 1898 does not require the payment of taxes to a State wherein the bankrupt has no property, and the State no means of collecting the tax from property within its jurisdiction. And it is urged that the taxes to be paid are those legally due and owing to the United States, State, county, district or municipality, which does not contemplate payment to any and all States, but only to THE State, which, it is insisted, should be interpreted with the limitation stated.

It is to be noted that there is a very significant difference in this respect, in the act of 1898, from the provisions of the bankrupt act of 1867, 14 Stat. 530, c. 176, the law in force last before, and doubtless in the view of Congress when the present law was drafted. That act, of 1867, gave priority of payment to all debts due to the United States, and all taxes and assessments under the laws thereof, all debts due to the State in which the proceedings in bankruptcy were pending, and all taxes and assessments made under the laws of *such* State, and provided that nothing contained in the act should interfere with the assessment and collection of taxes by the authority of the United States or any State.

The requirement of the present law is a wide departure from the act of 1867, and specifically obliges the trustee to pay all taxes legally due and owing, without distinction between the United States and the State, county, district or municipality.

An argument is made as to the alleged injustice of this requirement, in that it may take away from the local creditors in the State where the property of the corporation is situated practically all the assets of the corporation in favor of the State where the corporation is organized, but has no business or property. And it is urged that to permit a State under such circumstances to have a preference in the payment of

taxes would give to it an advantage which it could not otherwise obtain for want of charge or lien upon the property. But considerations of this character, however properly addressed to the legislative branch of the government, can have no place in influencing judicial determination. It is the province of the court to enforce, not to make the laws, and if the law works inequality the redress, if any, must be had from Congress.

The question is, is the claim a tax legally due and owing to the State of New Jersey? We have been cited to many cases in the State of New Jersey, some of which it is alleged maintain the theory of the appellant that this is a tax, and some the contrary view.

Without undertaking to analyze these numerous cases or to harmonize the views expressed by different judges, we think the weight of judicial decision in that State favors the view that this is a tax imposed upon the right of the corporation to continue to be a corporation, with power to exercise its corporate franchises, based upon the amount of its capital stock issued and outstanding.

In *Hancock, Comptroller,* v. *Singer Manufacturing Co.,* 62 N. J. L. 289, 335, it was said:

"The act of 1884 (Pamph. L, p. 232) is entitled 'An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof.'

"In that act this imposition is called a yearly license fee or tax.

"In a supplement passed to the act of 1884 (Pamph. L, 1891, p. 150) it is styled 'a tax.'

"In a further supplement, passed in 1892 (Pamph. L, p. 136), it is called 'an annual license fee or franchise tax.'

"It is wholly immaterial what name may be given to it. The fact that it is called a 'license fee' or 'franchise tax' cannot validate it. It is levied under an act passed 'to authorize the imposition of state taxes,' and it is none the less an interdicted imposition [having reference to the charter

then being considered], and none the less a tax because it is given a new name.

"Although under our adjudications it is not a tax on property in a sense which brings it within article 4, section 7, paragraph 12, of our state constitution, it is a tax on the capital stock of the corporation. Otherwise the act would be manifestly void for want of a title expressing its object, and the State would be deprived of all its revenue under the act of 1892. The franchise of the company is the right to hold property and exercise its corporate privileges. The Supreme Court of the United States has decided that where a corporation is exempted from taxation, it is not subject to a tax on its franchise. *Wilmington Railroad Co.* v. *Reid,* 13 Wall. 264."

While we take this view of the decisions of the Supreme Court of New Jersey and reach the conclusion that the claim in question is for a tax within the meaning of the law as construed by that court, the bankruptcy act is a Federal statute, the ultimate interpretation of which is in the Federal courts. It is doubtless true, as was said in the opinion of the learned judge speaking for the Circuit Court of Appeals, in this case, that if the highest court of the State should decide that a given statute imposed no tax within the meaning of the law as interpreted by it, a Federal court, in passing upon the bankruptcy act, would not compel the State to accept a preference from the bankrupt's estate upon a different view of the law. Conceding the doctrine that the meaning of a statute is a state question, except where rights, the subject of adjudication by the Federal courts, have accrued before its construction by the state court, or the question of contract within the protection of the Federal Constitution is involved, still a state court, while entitled to great consideration, cannot conclusively decide that to be a tax within the meaning of a Federal law, providing for the payment of taxes, which is not so in fact  The section (64a) itself declares that in case of disputes as to the amount or legality of any such tax, they

shall be heard and determined by the court. The state court may construe a statute and define its meaning, but whether its construction creates a tax within the meaning of a Federal statute, giving a preference to taxes, is a Federal question, of ultimate decision in this court. ·

We are of opinion that this claim was for a tax. The language of the act, as we have said, is very broad and includes all taxes. It is not necessary to enter upon a discussion of the different forms which taxes may take. Generally speaking, a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government. We think this exaction is of that character. It is required to be paid by the corporation after organization *in invitum*. The amount is fixed by the statute, to be paid on the outstanding capital stock of the corporation each year, and capable of being enforced by action against the will of the taxpayer. As was said by Mr. Justice Field, speaking for the court in *Meriwether* v. *Garrett*, 102 U. S. 472, 513:

"Taxes are not debts. It was so held by this court in the case of *Oregon* v. *Lane County*, reported in 7 Wallace. Debts are obligations for the payment of money founded upon contract, express or implied. Taxes are imposts levied for the support of the Government, or for some special purpose authorized by it. The consent of the taxpayer is not necessary to their enforcement. They operate *in invitum.* · Nor is their nature affected by the fact that in some States—and we believe in Tennessee—an action of debt may be instituted for their recovery. The form of procedure cannot change their character."

It is urged by the appellee, and upon this ground the case was decided in the Circuit Court of Appeals, that this is in no just sense a tax levied by the State, but is the result of a contract by which the corporation was brought into existence, the consideration being the payment of annual sums for the privileges given it by the State, for which no lien is given upon the property, but only a right of action for their recovery.

But this imposition is in no just sense a contract. The amount
to be paid, fixed by the statute, is subject to control and
change at the will of the State. It is imposed upon all cor-
porations, whether organized before or after the passage of
the act. The corporation is not consulted in fixing the amount
of the tax, and under the laws of New Jersey the charter of
such corporations as this may be amended or repealed. *Han-
cock* v. *The Singer Manufacturing Co.,* 62 N. J. L. 289, 328.

The form of the collection of taxes is left to the discretion
of the taxing power; sometimes a lien is provided, sometimes
a summary method of collection is awarded; in other cases, an
action for debt is given, and, as in the present case, with the
right of prohibition of the exercise of corporate franchises by
injunction for failure to pay.

We think then that, as denominated in the statute, this
was a tax imposed by the State upon the corporation for the
privilege of existence and the continued right to exercise its
franchise.

The State which created this corporation had the right to
fix the terms of its existence, and to provide, if it saw fit so
to do, that for the continued existence of its franchise the
corporation should pay certain sums to the State, fixed by
the amount of its yearly outstanding capital stock. *Metro-
politan St. Ry. Co.* v. *New York,* 199 U. S. 1, 8, 37 *et seq.*

Coming to the specific objections to the claim for the year
1902, the claim was presented upon the basis of $40,000,000
of outstanding capital stock, when in fact there was only
$10,000,000 of such stock, the assessment by the state board
being upon the former sum and made upon the failure of the
corporation to report. But we do not think the finding of
the state board is conclusive. The tax is to be assessed upon
capital actually outstanding. It may well be doubted whether
the board had power to tax any other stock. But be that as
it may, section 64a specifically provides that in case any ques-
tion arises as to the amount or legality of taxes, the same shall
be heard and determined by the court, with a view to ascer-

494          OCTOBER TERM, 1906.

HARLAN, J., FULLER, CH. J., and PECKHAM, J., dissenting.    203 U. S.

taining the amount really due. We do not think it was the intention of Congress to conclude the bankruptcy courts by the findings of boards of this character, and that the claim should have been upon the basis of the capital stock actually outstanding.

The amount claimed for the year 1903, it is insisted, had not accrued at the time of the adjudication in bankruptcy, which was on April 23, 1903, the return being made on May 2, 1903, and the assessment was not made until July 1, 1903; but the annual return required to be made to the board, on or before the first Tuesday in May, is upon the basis of the capital stock issued and outstanding the first of January preceding the making of the return. The bankrupt act requires the payment of all taxes legally due and owing. We think the tax thus assessed upon that basis was legally due and owing, although not collectible until after the adjudication.

We reach the conclusion that, under the bankruptcy act these taxes, in the amounts hereinbefore indicated, were entitled to preferential payment in favor of the State of New Jersey, and that the Circuit Court of Appeals erred in reaching a contrary conclusion.

Its judgment will be

*Reversed and the cause will be remanded to the District Court for further proceedings in conformity with this opinion.*

MR. JUSTICE HARLAN (with whom concurred MR. CHIEF JUSTICE FULLER and MR. JUSTICE PECKHAM) dissenting.

The Chief Justice, Mr. Justice Peckham and myself dissent from the opinion of the court. In our judgment the "taxes" owing by a bankrupt to a State—which section 64*a* of the bankruptcy act provides shall be paid in advance of the payment of dividends to creditors—do not embrace an "annual license fee or franchise tax" (the words of the New Jersey statute), which, strictly, is not a property tax, but only an exaction by the State for the privilege given to a corporation

to do certain business under its charter. We think the bankruptcy act should be so construed. It cannot be otherwise construed without doing gross injustice to those creditors of the bankrupt corporation who have business transactions with it at its place of business. Here the bankrupt corporation did no business in New Jersey. So far as appears, it did not have, nor expect to have, any connection with that State except to become incorporated under its laws. It had its seat of operations and all its tangible property in the State of Illinois. It had no property in New Jersey. Its scheme was to get a charter from New Jersey and then go to another State for purposes of its business. We do not think that Congress intended that in the distribution of the assets of a bankrupt preference should be given to the claims of a State which have their origin in and are wholly based upon a *bargain* with the State whereby certain privileges are granted in exchange for certain payments—privileges which the State may grant or withhold at pleasure. In our opinion the word "taxes" in the bankruptcy act was intended to embrace only burdens or charges imposed *in invitum* and which were in their nature and in reality "taxes," as distinguished from governmental exactions for privileges granted. The claim of New Jersey, whatever its true amount, should not be given priority, but should be placed upon the same footing with claims of other creditors. This view is consistent with the act of Congress.