# IN THE MATTER OF FELIPE RAMIREZ QUIÑONES, Bankrupt.

San Juan, Bankruptcy, No. 40.

REVIEW OF REFEREE'S DECISION ON TAXES.

Taxes—Assessment—Taxes Are Not Debts, But Imposts.

1. Taxes are due and owing from the date of the assessment, regardless of the fact that they may not be collectable until a later date and they are not debts founded upon contract, but imposts levied for the support of the government.

Taxes—Assessment—Ownership.

2. The assessment fixes the lien upon the property itself, and the lien is not affected by a change of ownership subsequently to the date of the assessment.

Taxes—Assessment—Revaluation—Exemption.

3. Notwithstanding that the local law fixes a time after which the valuation placed on property for taxation purposes cannot be reviewed, the matter can be reinvestigated by a court of bankruptcy after that time. Property in the hands of a trustee is not exempt from taxation at its proper value, and the fact that on account of an appeal it remains longer in the hands of the trustee than might be desirable makes no difference in the result.

Taxes—Surcharges—Payment Under Protest.

4. Where the trustee failed to pay taxes at the time fixed by law because of dissatisfaction with the valuation placed upon the property by the government, and did not pay them under protest or make a tender of the proper amount, surcharges will be allowed against him as against any other litigant.

Opinion filed February 19, 1917.

In the Matter of Quiñones.

*Mr. H. L. Kern,* Attorney General, for the Island of Porto Rico.

*Mr. H. F. Besosa* for trustee.

HAMILTON, Judge, delivered the following opinion:

This is a matter of taxes, and comes up by petition of the island of Porto Rico for review of the decision of referee Lee at Ponce. The facts seem to be that Felipe Ramirez Quiñones was engaged in the mercantile business in the Ponce district, being concerned entirely with merchandise and other personal property. He fell into financial difficulties, and on March 3, 1915, was adjudicated a bankrupt by this court, and the matter referred to referee ·Lee. On April 16 of the same year the personal property was ordered sold. On May 24, 1915, taxes to the amount of $123.53 were paid by the trustee for the second half of the tax year of 1914–15, which ended June 30, 1915. On October 26 was proof of the claim of the island of Porto Rico for taxes amounting to $239.96 for the tax year 1915–16; that is to say, from July 1, 1915, through June 30, 1916. The amount of money realized by sale of the property was $5,282.78, but there was no distribution on account of appeal from the decision of this court rejecting the priority claim of a creditor. The circuit court of appeals affirmed the decision of this court, and meantime came proof on October 9, 1916, of claim of the island of Porto Rico again for the taxes of 1915–16 with surcharges added, amounting in all to $268.65.

The referee held that the claim of the people of Porto Rico for taxes upon the bankrupt's estate for the fiscal year 1915–16

was invalid, and disallowed the claim upon the ground that it is inequitable that creditors should have to pay taxes because the proceeds were not distributed owing to an appeal. The basis of this decision seems to be that local legislation provides uniform assessment throughout the island in January six months previous to the assessment coming into force, in order to enable the Treasury Department to get ready to begin the collection of taxes on the 1st of July.

1. It is necessary in the first place to understand thoroughly what the local laws are on the subject of taxation, in order to see how far they are enforceable under § 64a of the Bankruptcy Act.

The collection of property taxes in Porto Rico is regulated by chapter 1 of title 9, §§ 285 to 355 of the Political Code. Taxes are assessed but once a year, namely, on January 15, for the succeeding fiscal year, July 1 to June 30. The person against whom the taxes are assessed on January 15 is liable for their payment, that is, for the payment of the taxes of the succeeding fiscal year, regardless of alienation or other disposition of the property by him. It is provided that "for and during the fiscal year beginning the 1st day of July, 1908, and ending the 30th day of June, 1909, and in every succeeding fiscal year . . . there shall be levied and collected. . . ." Pol. Code § 285, as amended March 12, 1908 (Laws 1908, p. 187).

". . . all property not expressly exempted from taxation shall be assessed and taxed. . . . Personal property shall include . . . money, whether in the possession of the owner thereof or held by or on deposit with some other person or institution. . . ." Pol. Code, § 290, as amended March 10, 1904 (p. 169).

"As soon after January 15th of each year as is possible it shall be the duty of the assessor . . . to fill out an assessment schedule." Pol. Code, § 295, as amended Sept. 3, 1910 (p. 36), after providing for amendments and corrections to the tax roll of the preceding year.

"All personal property within or without Porto Rico shall be assessed to the owner thereof in the municipality in which he resides on the 15th day of January. . . ." Section 297, as amended Sept. 3, 1910 (p. 37).

"All real property shall be assessed in the municipality in which the real property lies, to the person who is either the owner or in possession thereof on the 15th day of January, and the person appearing of record on the 15th day of January shall be held to be the true owner thereof." Section 298, as amended Sept. 3, 1910 (p. 37).

"The tax that is assessed for the current fiscal year and for the three prior fiscal years . . . shall constitute the first lien thereon." Section 315, as amended March 14, 1907 (p. 338.)

"All such shares shall be assessed at their fair market value on the fifteenth day of January." Section 320, as amended Sept. 3, 1910 (p. 38).

And persons appearing of record as owners of shares "On the day next preceding the 15th day of January of each year shall be taken and deemed to be the owners thereof." Section 320, supra.

"The taxes imposed by § 285 of this title shall be payable semiannually in advance upon the 1st day of July and January of each year. Such taxes shall become delinquent if not paid within sixty days after the date on which the same become due,

In the Matter of Quiñones.

and the collectors shall collect upon all such delinquent taxes an additional sum of 1 per cent of the amount thereof for each month, or fraction thereof, for which said taxes are so delinquent." Section 330, as amended March 14, 1907 (p. 362).

"No change shall be made in the assessment of any property during any fiscal year, because of its transfer or other alienation; except that if real estate is divided by sale. . . ." Section 324, amended March 14, 1907 (p. 362).

The referee seems to hold that under this legislation the taxes were "due and owing" (to use the phraseology of the Bankruptcy Act, § 64a) for 1915–16 only in July, 1915, and that, as the property was not in the hands of the trustee at that time, it was not taxable at all. This brings up the question of proper construction of the words, "all taxes legally due and owing by the bankrupt." The Supreme Court has decided that taxes are due and owing from the time of assessment, regardless of the fact that they might not be collectable until a later date. New Jersey v. Anderson, 203 U. S. 483, 494, 51 L. ed. 284, 288, 27 Sup. Ct. Rep. 137. The general rule is that when no time is expressly fixed by a statute for a tax lien to take effect, it accrues upon the assessment. Lyon v. Alley, 130 U. S. 177, 188, 32 L. ed. 899, 903, 9 Sup. Ct. Rep. 480. To the same effect is Collier, Bankr. 10th ed. p. 895. Taxes become legally due and owing on the day they are assessed. Re Flynn, 134 Fed. 145. Taxes are held to be something different from a debt by contract. "Generally speaking, a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the government." New Jersey v. Anderson, 203 U. S. 483, 492, 51 L. ed. 284, 288, 27 Sup. Ct. Rep. 137. Taxes are not debts, for debts are obligations for the payment of money founded

upon contract, express or implied. Taxes are imposts levied for the support of the government. The consent of the taxpayer is not necessary to their enforcement. They operate in invitum. Nor is their nature affected by the fact that in some states the action of debt may be instituted for their recovery. The form of procedure cannot change their character. Lane County v. Oregon, 7 Wall. 71, 80, 19 L. ed. 101, 105. And these imposts become due and payable under the above authorities at the time the assessment is complete.

2. The fact that property may change hands after that date does not make any difference. The assessment of the property fixes the lien, where a lien is provided, upon the property itself, and this is not affected by a subsequent change of ownership. Vicksburg Waterworks Co. v. Vicksburg Water Supply Co. 80 Miss. 68, 31 So. 535. The case at bar, however, is not one of change of ownership. The trustee did not buy the property. He is in possession as the agent of the court in order to handle the property so that all just charges against the owner, whether to the Insular government or to individual creditors, may be adjudicated and paid. The principles applicable as between vendor and vendee do not apply in such case.

3. The law of Porto Rico governing such cases seems to be that the assessment of a preceding year applied to 1915–16, subject only to a revaluation where the assessor thinks it proper, or to a revaluation when requested by the owner. In the case at bar there was no revaluation at the instance either of the assessor or of Quiñones, and the contention of the island of Porto Rico is that it is now too late to have the matter investigated, that it became practically res judicata, on January 15, in the absence of any further proceedings by the taxpayer. There

IX. Porto Rico.—29.

In the Matter of Quiñones.

seems to be no doubt that the proceedings were regular, al-
though it may well have been due to neglect on the part of the
owner, from his being in financial difficulties.   The question
is, whether the creditors are to be concluded by these facts.

It has been held by the Supreme Court that under quite simi-
lar circumstances an overvaluation by the tax authorities, as in
the matter of issue of stock, can be reinvestigated by the bank-
ruptcy court after the regular time fixed by the local law.  New
Jersey v. Anderson, 203 U. S. 483, 51 L. ed. 284, 27 Sup. Ct.
Rep. 137.   Based upon that case, it has been decided by the
district court for the eastern district of New York, that the
assessment can be so investigated to the extent of determining
whether the property to be taxed actually existed.   Re Otto
Freund Arnold Yeast Co. 178 Fed. 305.   It makes no difference
that the property was in the hands of the trustee.   It received
the protection of the government.   Property in the hands of a
trustee in bankruptcy is not exempt from taxation at its proper
value.   The fact that on account of appeal it remained longer
in the hands of the trustee than might be desirable can make no
difference in the result.   Property in the hands of a trustee is
liable to taxation to the same extent that property is liable in the
hands of an individual, but the trustee under Bankruptcy Act,
§ 64a, is not bound by the technical regularity of the assessment,
if, in point of fact, the property was nonexistent or greatly over-
valued.   The state is entitled to its proper imposts, but not to
improper imposts; and whatever might be true as between the
local government and the individual under local laws, the Bank-
ruptcy Act, by subjecting tax claims to the control of the bank-
ruptcy court, must be construed as allowing the investigation

of their essential justice. The court is not concluded by the technical regularity of the proceedings.

In the case at bar it would seem that the property was certainly worth $5,282.78. If the government wishes to have the question of proper valuation on January 15 tried, the referee will allow reasonable time, say ten days, for application in this regard. Otherwise the value as found by the actual sale of the property a few months later, to wit, $5,282.78, will be followed, and the trustee will be authorized and ordered to pay taxes for 1915–16 upon that amount.

4. The local law allows surcharges at a certain rate in case taxes are not paid at the proper time. No reason is perceived why this is not applicable in the case at bar. Taxes must be held to have been due upon some valuation at the date fixed by the law. The only question would be, whether, while the taxpayer, whether Quiñones or the trustee, should have paid the taxes and he was not permitted to do so at the proper valuation as above held in this opinion, he should be liable for penalties. The law, however, provides a way of meeting such a case, and that is by a payment under protest or a tender of the proper amount. Neither of these courses was pursued by Quiñones or by the trustee. The trustee preferred, and he had a perfect right, to test the entire question of validity of any taxes at all. This being decided against him, he must pay the surcharge just as any other litigant would have to pay interest upon the amount which is delinquent. It is true that interest does not ordinarily run upon public dues, but surcharges are expressly provided by the law of Porto Rico, and in effect become a part of the tax itself. Stanard v. Dayton, 137 C. C. A. 35, 220 Fed. 441.

The review prayed for is therefore granted to the extent of

In the Matter of Quiñones.

directing payment of taxes upon $5,282.78, unless within ten days the people of Porto Rico seek a revaluation of the property as of January 15, 1914. In such case the referee will take evidence and find accordingly.

It is so ordered.