OLD DOMINION COPPER MINING AND SMELTING COMPANY, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENTS ET AL., RESPONDENTS.

Argued June 7, 1917—Decided June 15, 1917.

The annual license fee or franchise tax, imposed upon corporations by *Pamph. L.* 1906, *p.* 31, amending the supplement of 1901 (*Pamph. L., p.* 31) to the act of 1884 (*Pamph. L., p.* 282), is payable each year in advance, the year beginning with the first Tuesday of May.

On *certiorari.*

Before Justice SWAYZE, by consent.

For the prosecutor, *Gilbert Collins.*

For the respondents, *Herbert Boggs,* assistant attorney-general.

The opinion of the court was delivered by

SWAYZE, J. This case presents the question that was expressly reserved by the Court of Errors and Appeals in *American Woolen Co.* v. *Edwards, Comptroller.* Further reflection has confirmed me in the opinion expressed in that case. *Ante p.* 293. The present prosecutor was dissolved in March, 1917, and is therefore not liable to the franchise tax if the year for which it is claimed begins with the first Tuesday of May.

We have held that the tax is in the nature of a license fee, payable in advance. *New York and New Jersey Water Co.* v. *Hendrickson,* 88 *N. J. L.* 595, 600. In that case we pointed out the difference between such a tax declared by the legislature to be annual, and the ordinary property tax imposed upon a fixed day. In the American Woolen Company case I said that calling the tax a license fee, as the statute does, suggested payment in advance. since the government would naturally make the payment of the fee a condition precedent. I might have gone further and said that the legislature has in fact made the tax payable in advance as near as possible. The original act of 1884 was approved April 18th. The year for which the annual tax was thereby for the first time imposed could not begin until the tax was imposed by the approval of the act in April, and the tax was made payable in June, *i. e.,* as soon as the necessary returns could be had and the calculations made. The Court of Errors and Appeals did not question this view in the case cited. It results that the year for which the tax is to be paid cannot be the calendar year beginning January 1st. The act imposing this tax on corporations

like the prosecutor was passed February 19th, 1901. *Pamph. L., p.* 31. If the "annual license fee or franchise tax," as the act calls it, were imposed for a calendar year, that year could not have begun until January 1st, 1902, unless the tax were expressly made retroactive. Now, the act of 1901 was a supplement to the act of 1884. *Pamph. L., p.* 282; *Comp. Stat., p.* 5286. Taxes under that act are payable in June and subject to a penalty after July 1st. If we held that the license fee or franchise tax is for a calendar year we should either have the absurdity that the first annual tax under the act became payable six months before the year for which it was levied had begun or we should have the injustice of construing a tax to be retroactive when the legislature had not made it so. I do not question the power of the legislature to make a tax retroactive, but, on well-settled principles, we will not adopt such a construction unless the language plainly requires it. The language of the statute is so far from requiring such a construction that the result would be absurd. We should be forced to say that a corporation which ceased to exist on February 18th, 1901, would be liable to a tax which was not imposed by the legislature until February 19th, 1901.

It seems too obvious to require further illustration that the intent of the legislature was that the year should begin with or after the passage of the act and before the tax became payable thereunder. As to the class of corporations to which the prosecutor belongs the year must begin between February 19th and July 1st. In the absence of any further indication it would be natural to assume that the year began at the earliest possible date, which would be the date the act imposing the tax took effect. This was the underlying reason for our ruling in *Brewing Improvement Co.* v. *Board of Assessors,* 65 *N. J. L.* 466, with reference to the Franchise Tax act of 1884. There are, however, other considerations which make that ruling inapplicable now. We held, in *Hardin* v. *Morgan,* 70 *Id.* 484; *affirmed,* 71 *Id.* 342, that the legislature had substituted the first Tuesday of May for the 18th day of April, the date the act of 1884 took effect. Now, we said, in the

earlier case, that that date marked the "beginning of the yearly period for which the fee or tax is charged." The necessary implication from the change of date by the act of 1901, and what was said in *Hardin* v. *Morgan,* is that under that act the first Tuesday in May marks the beginning of the yearly period for which the fee or tax is charged; *Hardin* v. *Morgan* was affirmed on the opinion of this court.

Possibly, it was open to the court, prior to that decision, to hold that the yearly period began April 18th or February 19th, depending on the class of corporation. It is not open to us now. The decision has been acted on for years, and the stability of jurisprudence requires that it should be adhered to. Not only is this required for the stability of our jurisprudence, but, since the decision in *Hardin* v. *Morgan,* the statute of 1901 has been amended. *Pamph. L.* 1906, *p.* 31. If the legislature had meant something different, the statute would have contained language apt for the purpose. It does not contain such language. The necessary inference is that the legislature was satisfied with the law as construed by the courts. There is another consideration of the practical administration of the act which fortifies this view. The act of 1906 re-enacts the provisions of the act of 1901, exempting manufacturing and mining corporations fifty per centum of whose capital stock is invested in mining or manufacturing carried on within this state. The courts had just held in the case cited that this exemption could not be allowed unless the annual return was made on or before the first Tuesday of May. By the statute the exemption must be allowed if the other conditions exist and return is made on or before that date. The necessary result is that in the case of mining and manufacturing companies the amount of the license fee or franchise tax could not be ascertained until that time. It cannot be that the legislature meant that a fee declared by statute to be annual can cover a time antecedent to the date when it first becomes possible to ascertain the amount thereof. The same rule must be applicable to corporations other than mining and manufacturing taxed by the same language of the same act of which the prosecutor is one.

To hold that the year begins with the first Tuesday of May ensures uniformity; any other date ensures diversity; for if the year is held to begin January 1st as to corporations whose tax is determined by the situation on January 1st, it must be held by parity of reasoning to begin February 1st with corporations whose tax is determined by the situation on February 1st. If we take the view that the year begins with the passage of the act imposing the tax, it begins on April 18th as to corporations taxed under the original act of 1884 and on February 19th as to corporations taxed under the supplement of 1901. This diversity would be due, not to any legislative declaration, but to judicial construction, or, perhaps, rather, judicial inference, an inference not permissible. We must remember that the supplement of 1901, as amended in 1906, is part of the act of 1884, and the act and its supplements must be treated as a consistent whole.

There is also an historical reason and a reason of convenience for holding that the tax year begins in May. For many years, and certainly since the constitution of 1844, our legislature has met in January. It was natural that taxes imposed by the legislature should become effective after there had been time for legislation. Ordinarily, May would come after adjournment and would prove the earliest convenient date. If, for example, the legislature should think it wise to increase the franchise taxes as it has increased some franchise taxes this winter, it would certainly seem unfair to make the increase retroactive, when the business of the corporation had been adjusted to the existing situation. No charge of unfairness for that reason, at least, could be brought against a tax to begin after the adoption of the legislation. No doubt the legislature might impose a franchise tax as they impose the general property tax, as an imposition taking effect on a particular day; no doubt they might also measure the amount of the tax by the situation as it existed on any day selected even though that day was before the act took effect. That is not the question here. The legislature has declared that this tax shall be annual. This can only mean that it shall be imposed once a year. In order that only one tax a year may be

imposed, it must be decided when the year begins and ends. To decide that question we must, of course, go back to the origin of the legislation, since each succeeding year must cover the same months as the first year. I need not repeat the arguments already stated against holding the tax year under this statute to be a calendar year nor the arguments stated in my opinion in the American Woolen Company case.

The United States Supreme Court, in construing the Bankruptcy act, held that the franchise tax was "legally due and owing" within the meaning of that act in the case of a corporation that was adjudicated a bankrupt on April 23d. *New Jersey* v. *Anderson,* 203 *U. S.* 483, 494. With the construction of the Bankruptcy act we have nothing to do. The court did not consider the history and language of our statute imposing the tax nor our decisions thereunder, although *Hardin* v. *Morgan* was cited by counsel. The case is not therefore a decision as to the meaning of our act. If it were, however, it would not control us. We recognize the eminence of that tribunal and entertain the most profound respect for its decisions, and even for its informal expressions of opinion, but it is vital to the very existence of the several states that their own tribunals control the construction of their own statutes, and this is pre-eminently true of tax acts which affect the state's revenue. The Supreme Court of the United States, in that very case, maintained its well-established right to construe federal statutes, notwithstanding a previous construction by a state tribunal. It is for us to maintain with equal vigor our right to construe our own state statutes. This right is so thoroughly settled by decisions of the United States Supreme Court that that tribunal will follow the decision of the state court on the construction of a state statute, notwithstanding its own prior decision to the contrary. *Fairfield* v. *County of Gallatin,* 100 *Id.* 47; recently cited as authority in *Northern Pacific Railway Co.* v. *Meese,* 239 *Id.* 614 (at *p.* 619).

The tax in this case must be set aside.