## The French Republic v. Board of Supervisors of Jefferson County, et al.

(Decided June 22, 1923.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Taxation—Distinction Between Property Owned in Private or Public Capacity Not Applied to Foreign Government.—The distinction made in applying Constitution, section 170, which exempts from taxation public property used for public purposes, between property owned for governmental purposes and property owned by a state or municipality in its private capacity, is not to be applied to the property of a foreign government; but, if that government deems it a proper governmental function to engage in trade for its support, the courts will not question its determination that property employed in such trade is owned in a public capacity.

2. Taxation—"Tax" Operates in Invitum.—A tax is an enforced contribution of money or other property, assessed in accordance with some reasonable rule of apportionment by authority of a sovereign state on persons or property within its jurisdiction, for the purpose of defraying the public expenses, and operates in invitum and

independent of the will or consent of the persons taxed and all proceedings for the levy and collection of a tax show a purpose to tax only persons who can be compelled to pay.

3. Taxation—Tax on Property of Foreign Country Could Not be Collected.—Since the French Republic is not suable in the state courts without its consent, and tobacco owned by it within the state cannot be subjected to the payment of the tax thereon, the state has no method whereby it can enforce the collection of any tax it might assess on such property.

4. Taxation—Theory Supporting Taxes Does Not Apply to Property of Foreign Government.—Taxes are imposed on the theory that the taxpayer should pay a portion of the expense incurred in the protection of his person or property, and that theory does not support the levy of a tax on property of a foreign government situated within the jurisdiction, since every nation should protect the personal property of all other nations within its jurisdiction without levying a tribute for that purpose.

5. Taxation—Sovereign Nation Entering Another for Purpose of Trade should Not be Taxed.—The absolute sovereignty of every nation within its own territory is subject to certain limitations sanctioned by the law of nations and imposed by its own consent, where foreign governments enter the territory with its consent, in which case there is an implied understanding it does not intend to place its sovereign rights within the jurisdiction of the other nation and therefore does not intend to subject them to taxation.

6. Taxation—Constitutional Exemption of Public Property, Construed in the Light of History, Does Not Authorize Taxation of Private Property of Foreign Government.—Constitution, section 170, exempting from taxation public property used for public purposes, should be construed in the light of history and the uniform dealing of one power with another, which does not sustain the right to tax the personal property of a foreign power temporarily within the jurisdiction, and, so construed, the Constitution does not authorize or require the taxation of tobacco within the state, owned by the French Republic for the purpose of trade therein.

THOMAS A. BARKER for appellant.

J. MATT CHILTON, J. S. LUSCHER, CHAS. I. DAWSON, Attorney General, and W. P. HUGHES for appellees.

## OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The French Republic exercises a monopoly in the sale of tobacco in those countries over which its jurisdiction extends, and the proceeds therefrom are a part of the revenue of its government and are used to defray its expenses. On July 1, 1918, it was the owner of, and had on storage in warehouses in Jefferson county, 4,359 hogsheads of tobacco of the value of $951,707.25, which it had

purchased with funds of its government from various dealers and brokers between April 1st and June 30th, 1918. None of the tobacco was purchased for the purpose of manufacture or sale in this country, but all of it was purchased for shipment to France, and was subsequently shipped to that country. The shipments, however, were delayed on account of war conditions, and were made as permitted by the United States government, 459 hogsheads being shipped in August, 1918, 365 hogsheads in September, 1918, 290 hogsheads in October, 1918, and the remainder by March 1, 1919.

In the year 1919 the board of supervisors of Jefferson county assessed the tobacco for taxation for the year 1919 in the name of the French Republic as owner, after notice to M. Herman, the French consul resident in Louisville, and to E. J. O'Brien & Company, both of whom were designated as the agents of the Republic. After unsuccessful appeals to the quarterly and circuit courts, the French Republic has prosecuted this appeal.

It is sought to uphold the validity of the assessment on the following grounds: The Constitution provides for the assessment and taxation of all property not exempted by it from taxation. Constitution, sections 172, 174. The only exemption is "public property used for public purposes." Constitution, section 170. The property in question was in this state on the assessment date in the year 1918. It was not "public property used for public purposes," but was owned by the French Republic in its private capacity as a trading corporation, and not in the exercise of a governmental function, and there is no provision of the Constitution nor principle of international law that prevents this Commonwealth from taxing such property.

It may be conceded that the language of the Constitution is broad enough to include all property within the jurisdiction of the state, and that section 170, which exempts "public property used for public purposes," applies only to property owned by the state or some municipal division thereof, and must be put aside as not controlling; but after all, the question is, did those who framed the Constitution intend to tax the personal property of a foreign sovereignty in the circumstances here presented?

Cases which in matters of taxation distinguished between property owned by a state or municipality in its

private capacity, and that owned for strictly govern-mental purposes, are not in point. The distinction which they make has its origin in the peculiar and distinctive features of our form of government, and we are not disposed to make our views of government the yardstick by which to measure the character of a foreign sovereignty. If that sovereignty deems it a proper governmental function to engage in trade for the purpose of maintaining its government, we shall not question its decision that the property so employed is owned in a public and not a private capacity. Therefore, it seems to us that, so far as our right of taxation is concerned, the case is the same as if the personal property involved had been purchased by the French Republic not for purposes of trade, but to be used in the building of ships or the construction of some public work.

In construing the taxation provisions of our Constitution, we should be careful not to overlook the nature of a tax. It is an enforced contribution of money or other property assessed in accordance with some reasonable rule of apportionment by authority of a sovereign state on persons or property within its jurisdiction for the purpose of defraying the public expenses. 26 R. C. L., p. 13. In other words, a tax operates *in invitum* and is in no way dependent upon the will or consent, expressed or implied, of the persons taxed. New Jersey v. Anderson, 203 U. S. 483, 51 L. Ed. 284. Indeed, the compulsory listing of property, the penalties provided for a failure to list and the authority given the assessing officers to list in case of the taxpayer's failure, together with the various provisions for enforcing the collection of the tax all show a purpose to tax the property of only those persons and corporations who may be required to pay either by suit or a proceeding *in rem*. It is conceded that the French Republic is not suable in our courts without its consent, and that the tobacco itself cannot be subjected to the payment of the tax. Therefore, if the assessment be upheld, we have no way of collecting the tax. We can neither negotiate nor declare war. All that we can do is to ask the state department to open international negotiations, or persuade Congress to declare war, for the purpose of collecting the tax, thus presenting a state of helplessness wholly at variance with the sovereign right of taxation.

In the next place, taxes are imposed on the theory that the taxpayer should pay a portion of the expense incurred in the protection of his person or property, and as applied to ordinary persons and corporations this principle seems eminently fair and just, but as applied to independent nations it is clearly opposed to the spirit of international amity which should prompt every nation to guard and protect the personal property of all other nations that happen to be temporarily within its jurisdiction without levying a tribute for that purpose.

Another consideration not to be overlooked is that the absolute sovereignty of every nation within its own territory does not always extend to foreign nations, but is subject to certain limitations sanctioned by the law of nations and imposed by its own consent. As said by Mr. Chief Justice Marshall in the Schooner Exchange v. McFaddon, et al., 7 Cranch. 116, 3 L. Ed. 287, "A nation would justly be considered as violating its faith, although the faith might not be expressly plighted, which should suddenly, and without previous notice, exercise its territorial powers in a manner not consonant to the usages and recognized obligations of the civilized world." Hence, if one nation enters the territory of another with its consent, for the purpose of mutual intercourse, it does so with the implied understanding that it does not intend to degrade its dignity by placing itself or its sovereign rights within the jurisdiction of the other, and we know of nothing more calculated to degrade the dignity of an independent nation than for another to attempt to exercise over it the sovereign right of taxation.

Moreover, the provisions of our Constitution should be construed in the light of history and the uniform dealing of one power with another. So far as we are aware, no state and no nation, at the time of the adoption of our Constitution, had ever assumed the right to tax the personal property of a foreign power that happpened to be temporarily within its jurisdiction. Indeed, there were numerous treaties exempting ordinary consuls from personal taxation unless they were citizens and owned real estate, or were engaged in business where the consulate was situated. United States Consular Regulations, 1896, section 83, 7 Ops. Atty. Gen. 18. Therefore, we are constrained to hold that the framers of our Constitution did not intend to inaugurate a policy so opposed to international usage, so incompatible with the dignity of

independent nations, and so likely to result in the loss of the good will of those whose friendship we have always prized.

As the property was not taxable, it should not have been assessed.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.

Whole court sitting.