*In re* JOHNSTON-NEWTON CO.

1. CORPORATIONS — YEARLY FRANCHISE FEE—COMPUTATION—WHEN YEAR BEGINS.

Under Act No. 85, Pub. Acts 1921, as amended by Act No. 233, Pub. Acts 1923, requiring the payment of a yearly corporation franchise fee, in advance, during the months of July or August, the year should be computed as beginning on August 31st, since that is the earliest date when the State could legally demand payment.

2. SAME—FEE TO BE COMPUTED UNDER AMENDATORY STATUTE.

Since said amendatory act took effect on August 30, 1923, and the State could not legally demand payment of the corporation franchise fee until August 31, 1923, a corporation filing its report on the latter date was entitled to have the fee payable by it computed under the provisions of said amendatory act.

Certiorari to Corporation Tax Appeal Board.   Submitted October 23, 1923.   (Calendar No. 31,097.)   Decided November 13, 1923.   Opinion on rehearing 226 Mich. 40.

The Johnston-Newton Company tendered its annual corporation franchise tax to Charles J. De Land, secretary of State, in accordance with Act No. 85, Pub. Acts 1921, as amended by Act No. 233, Pub. Acts 1923.   Defendant refused to accept the tax under the amended act, and plaintiff appealed to the corporation tax appeal board.   From an order denying the appeal, plaintiff brings certiorari.   Reversed.

*Campbell, Bulkley & Ledyard* (*Beaumont, Smith & Harris* and *Butterfield, Keeney & Amberg,* of counsel), for appellant.

*Andrew B. Dougherty,* Attorney General, and *Donald W. Sessions,* Assistant Attorney General, for appellee.

MCDONALD, J.    The plaintiff, Johnston-Newton Company, here seeks to review by writ of certiorari the action of the corporation tax appeal board and the secretary of State in their determination of the privilege fee required to be paid by domestic corporations organized for profit.    The plaintiff is a corporation organized for profit under the provisions of Act No. 84, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 9053 [1-176]).    Such a corporation was required by Act No. 85, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 11361 [1-14]), to file an annual report with the secretary of State in the months of July or August, showing its condition on the 30th of June next preceding the filing of such report; and at the time of the filing of its report, for the privilege of exercising its franchise and of transacting its business within this State, to pay an annual fee of 3½ mills upon each dollar of its paid-up capital and surplus, which fee should in no case be less than $50, nor more than $10,000.    In 1923 the legislature by Act No. 233, Pub. Acts 1923, amended certain sections of the law of 1921, changing the amount of the privilege fee to 2½ mills, and fixing a minimum of $10, and a maximum of $50,000; a further change required the July or August report to show the amount of its capital stock and surplus upon the 31st day of December, or on the date of the close of its fiscal year next preceding the filing of the report.    This act went into effect on the 30th of August, 1923, at 12:01 o'clock a. m.    On thle 31st of August, 1923, the plaintiff filed its report with the secretary of State showing the condition of its business on the 30th of June, 1923, which date was the close of its fiscal year; and at the same time tendered a privilege fee computed on the basis of the 1923 amendment.    The secretary of State refused to accept the amount tendered, claiming the tax was due and payable under the original act, and that the

amendment did not apply to the report required to be filed during the months of July or August, 1923. The plaintiff appealed to the corporation tax appeal board. On the hearing the board upheld the ruling of the secretary of State. To review its action a writ of certiorari has been allowed by this court.

There is but one question involved, viz.: Whether, upon filing its report on August 31st, the plaintiff was entitled to pay the privilege fee required by the amendment of 1923, or should pay the fee imposed by the original act.

It is the plaintiff's claim that the fee required to be paid by a corporation is an annual tax for the privilege of exercising its franchise for the period from the time of its report until the time of filing its next succeeding report; that on August 31, 1923, when it filed a report and tendered the fee, Act No. 85 as originally enacted was no longer in existence, that the fee had not accrued under that act, and that, therefore, it was entitled to pay in accordance with the provisions of the amended act which was the only law then in effect.

It is the defendant's claim that the tax which the plaintiff was required to pay on August 31st was not for the year immediately ensuing, but was for the annual period beginning on the preceding 1st day of July; that at that time the tax became fixed and was legally due and owing, though not collectible until the report was filed, and that it was not the intention of the legislature that the tax for 1923 should be computed under the terms of the amendatory act.

The question to be determined is whether the tax which the plaintiff was required to pay became a liability legally due and owing before the amended act went into effect on the 30th day of August, 1923. The tax charged in the statute is not the ordinary property tax, but is a fee imposed by the State upon

profit corporations for the privilege of exercising their franchises during a yearly period. The payment of the tax is a condition precedent to the right of the corporation to carry on its business for that period. As it is payable in advance the legislature evidently intended to make it legally due and owing on or within a reasonable time before the day which marks the beginning of the tax year. Neither the original act nor the amendment of 1923 expressly designate the time when the yearly tax period should begin, but we think both clearly indicate when the tax shall become legally due and owing. Sections 4 and 7 of both acts are alike in respect to the requirement that the fee shall be paid on the filing of the report, and the computation of the tax by the secretary of State in July or August of 1921, and annually thereafter in the same months. A corporation neglecting to file its report and pay the fee on or before the 31st day of August becomes subject to certain penalties prescribed in section 10. Thus, while the tax may be paid on the 1st of July or on any other day during July or August, the statute clearly means that August 31st is the earliest date on which payments can be legally required. A tax under this act is not legally due and owing until such time as the State has a right to demand payment or enforce it by the processes provided in the statute. Payment of the tax could not be demanded by the State and was not enforceable before August 31st, when the corporation must make return of its capital stock and surplus for taxation. There is no fixed liability before this time except such as arises on the dates designated as the time for determining the taxable status of the corporation. In the original act the taxable status is fixed on the 30th of June, and in the amendment on the 31st of December or at the close of the fiscal year. If any liability attaches on these dates, it is to the extent that the

capital stock and surplus then on hand becomes subject to the tax and must form the basis for its computation.    No greater liability than this can exist on July the first, because payment of the tax on that date is optional with the corporation, and so it is on every day following until August 31st.    Up to that time the corporation may exercise its franchise without paying the tax and without interference on the part of the State.    For these reasons we are unable to agree with the contention of the attorney general that the tax becomes legally due and owing on the 1st day of July, and that the tax year begins on that date.    The inference that the legislature did not so intend is strengthened by the further fact that if the tax year begins on that date, the operation of the amendatory act which went into effect on August 30, 1923, would be postponed until July, 1924.    From what has been said by counsel in their briefs as to the history and purpose of this legislation, we are inclined to the view that the legislature intended the amendatory act to become effective as to the 1923 tax. It did in fact go into effect on August 30, 1923.

As we have said, it is the contention of the plaintiff that the tax year begins whenever the corporation files its report and pays the fee.    We do not think the language of the statute is susceptible of such a construction.    The tax year begins when the corporation may be compelled to file its report and pay the fee or suffer the penalties provided by the statute.    As pointed out by the attorney general in his brief,

"To hold that the tax is due and payable at the time of the filing of the annual reports and that the tax year begins on that date, would result in endless confusion and be contrary to the intent of the legislature. It would mean that all the corporations of this State, of which there are ten thousand or more, by their own choice, have their annual tax periods beginning and ending on approximately sixty different days.    The

practical result of such a construction would also be that in the year 1923, each of the different classes of corporations might, by choosing for itself the date on which the tax was to become determined and assessed, deprive the State of considerable revenue."

We think greater uniformity, less confusion, and the best practical results will follow from fixing the yearly period as beginning on August 31st, at which time the tax becomes legally due and owing.   There will then be the same tax year for every corporation, and whether the tax be paid on any day in July or August, it will be paid in advance as contemplated by the act.   That such was the intention of the legislature is the most reasonable inference that can be drawn from the plain language of the statute.   It follows that the plaintiff is entitled to pay the tax in question under the provisions of the amended act of 1923.

We have not discussed the case of *New Jersey* v. *Anderson*, 203 U. S. 483 (27 Sup. Ct. 137), cited by the attorney general in his original brief, because it is now conceded that the construction there given to the New Jersey corporation tax act would result in endless confusion if applied to our statute.   The New Jersey cases cited by counsel for the plaintiff do not sustain their position.   The court of errors and appeal in that State did not pass on the question here under consideration.

The order of the corporation tax appeal board is reversed.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.