*In re* JOHNSTON-NEWTON CO.

CORPORATIONS—YEARLY FRANCHISE FEE—COMPUTATION—AMENDED ACT CONTROLS.

On rehearing, the former opinion (225 Mich. 53), holding that the yearly corporate franchise fee to be paid in advance by all profit corporations should be computed from August 31st, under the act as amended (Act No. 233, Pub. Acts 1923), is affirmed. CLARK, C. J., and BIRD and SHARPE, JJ., dissenting.

Certiorari to Corporation Tax Appeal Board. Sub-

mitted October 23, 1923.    (Calendar No. 31,097.) Decided November 13, 1923.    Reargued January 15, 1924.    Former opinion (225 Mich. 53) affirmed February 1, 1924.

The Johnston-Newton Company tendered its annual corporation franchise tax to Charles J. DeLand, secretary of State, in accordance with Act No. 85, Pub. Acts 1921, as amended by Act No. 233, Pub. Acts 1923. Defendant refused to accept the tax under the amended act, and plaintiff appealed to the corporation tax appeal board.    From an order denying the appeal, plaintiff brings certiorari.    Reversed.

*Campbell, Bulkley & Ledyard* (*Beaumont, Smith & Harris* and *Butterfield, Keeney & Amberg*, of counsel), for appellant.

*Andrew B. Dougherty*, Attorney General, and *Donald W. Sessions*, Assistant Attorney General, for appellee.

## ON REHEARING.

McDONALD, J.   We have given careful consideration to the briefs and oral arguments of counsel on the questions involved in this rehearing and see no reason for changing our former opinion.    We there held that the fees required to be paid by profit corporations for the privilege of transacting their business within this State are payable yearly in advance; that the yearly period begins on the 31st day of August and that the amended act applied to the tax for 1923. This, of course, means that all profit corporations must pay the tax for the year beginning August 31, 1923, at the rate fixed in the amendment.

Our former judgment is affirmed.

MOORE, STEERE, and FELLOWS, JJ., concurred with McDONALD, J.

WIEST, J. I concur with Mr. Justice McDONALD. The demise of the applicable provisions of the law of 1921 was fixed by legislative and executive action, effective by constitutional mandate, August 30, 1923. The law imperatively demands equality among all under it in imposing a privilege tax, and such equality can only be accorded by considering the period from July 1st to August 30th as providing data for imposing taxes due and enforceable August 31, 1923. A State privilege tax necessarily rests upon statute and any such statute must run the course set for the tax exacted for the privilege. The law of 1923 runs such course.

This holding does not render the law of 1923 retrospective. It is true that a legislative act speaks only from the date it becomes effective, but it is equally true that the legislature may make antecedent facts the basis for present liability to pay a privilege tax. Reports filed and taxes tendered under the law of 1921 vested no right of privilege under the law of 1923. The law of 1921 could not operate *proprio vigore* after it was moribund.

If payment under the law of 1921 be held to carry the privilege, then operation of the law of 1923 is postponed for a year. No such intent is expressed in the law of 1923, and no such result is permissible.

STEERE and FELLOWS, JJ., concurred with WIEST, J.

SHARPE, J. (*dissenting*). On further consideration, I am unwilling to concur in the views of the majority of the court as expressed in the opinions of Mr. Justice McDONALD.

Under section 4 of the 1921 law, every corporation subject to its provisions is required to pay "an annual fee," specified therein, on its paid-up capital and surplus at the time of filing its annual report. Section 7 provides that such report shall be filed during the

months of July and August in each year, and shall contain certain data which will reveal the amount of its capital and surplus upon the 30th day of June next preceding.    The tax provided for is a specific one, to be paid in advance each year, for the privilege of doing business in this State.    The question presented is:    When does the tax year begin?    Or, in other words, For what period is the tax to be paid?

In my opinion, this should be determined from a consideration of the 1921 act alone.    There is nothing in the amendment to indicate an intent to change the date of the beginning of the year for which the tax is to be paid.    Had the question been raised before the act of 1921 was amended, how should it have been answered?    Under the act, the tax is to be computed on the amount of the capital and surplus possessed by the corporation on the last day of June in each year. A report thereof may be filed and the amount of the tax ascertained and paid on the day following.    This day, July 1st, in each year, is, in my opinion, the date when liability attaches.    It is the beginning of the period for which the tax is to be paid.    While the amount of the tax cannot be ascertained until the report is filed, the rate is fixed and a simple computation is all that is necessary to determine the amount. That collection may not be enforced until after August 31st is in no way controlling.    It is not unusual in tax statutes to find such a provision.    Under our general tax law, the tax becomes a liability on December 1st, when the tax roll is delivered to the treasurer, but payment may not be enforced, except in certain specified cases, until after the 10th day of January following.    While different rules apply to the imposition of a property tax and a privilege tax, the latter is here based on a valuation of assets representative of property, and the provision for voluntary payment within a certain time should be construed as simply days of grace within which payment may

be made as it is in the general tax law.    In the construction of a statute we may consider the occasion and necessity of its enactment and the object intended to be accomplished by it.    It is a well known fact that at that time the State was confronted with a very considerable deficit.    The intent of the legislature was to remedy this condition.    To do so, they imposed this tax, and must be presumed to have intended to make it due and payable at the earliest moment after the effective date of the act.    It is also well known that the end of the fiscal year of most corporations is June 30th.    The legislature therefore provided that the tax should be computed on the capital and surplus as they existed on that day.    It would have been impracticable to require that all reports should be made on the day following.    A reasonable time must be allowed to do so.    The months of July and August were so allowed.    The legislature in effect said to the corporations, "You have so much capital and surplus on June 30th.    For the year after that date, you must pay a tax on this sum for the privilege of doing business in this State during that time."    In fairness to the taxpayer, the year should begin immediately after June 30th.    Otherwise, it may be required to make payment based on an amount of capital and surplus considerably different from that which it possesses at the time the tax-paying period begins. The intent to impose the tax for a particular year is apparent.    No provision is made should there be a change in the amount of capital and surplus possessed on June 30th as shown by the report.    Should a corporation become dissolved or go out of business during July or August, it must, under section 7 of the act, still file a report "showing its condition at the close of business upon the thirtieth day of June next preceding," and, as a condition precedent to the filing of the report, it must pay the tax for the succeeding year.

If I am right in the conclusion reached that the year for which the 1923 tax must be paid began on July 1, 1923, then the tax became a liability on that day, subject only to ascertainment by computation of the amount when the report should be filed, and the amendment, although it became effective on August 30th, in no way affected such liability or released plaintiff therefrom.

The conclusion I have reached is in accord with the holding in *New Jersey* v. *Anderson,* 203 U. S. 483 (27 Sup. Ct. 137).

The writ should be dismissed.

CLARK, C. J., and BIRD, J., concurred with SHARPE, J.