## In re COSMOPOLITAN POWER CO.

### STATE OF NEW JERSEY v. ANDERSON.

(Circuit Court of Appeals, Seventh Circuit. April 11, 1905.)

No. 1,122.

1. BANKRUPTCY—CLAIMS—DISALLOWANCE—APPEAL.

Where a state filed a claim against a bankrupt corporation for an alleged franchise tax, and more than $500 of such claim was disallowed, the state was entitled to appeal from such disallowance, under Bankr. Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], authorizing appeals to the Circuit Court of Appeals from a judgment allowing or rejecting a debt or claim of $500 or over.

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. SAME—SCOPE OF REVIEW.

Where the disallowance of a claim against a bankrupt's estate was properly in the Circuit Court of Appeals by an appeal respecting the amount of the claim, taken as authorized by Bankr. Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], the appellant was entitled to present any question concerning the security or rank of the debt, as an incident thereof.

3. TAXES—STATE DECISIONS—EFFECT ON FEDERAL COURTS.

A federal court of bankruptcy, in determining whether a state imposition is a tax, within Bankr. Act July 1, 1898, c. 541, § 64a, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], requiring priority of payment thereof, will not be bound by the decisions of the state courts unless the state decisions have authoritatively expounded the substance of the question, and not merely given the name "tax" to an exaction which is not such.

[Ed. Note.—State laws as rules of decision in federal courts see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

4. SAME—STATE STATUTES—CONSTRUCTION—CORPORATE IMPOSITIONS.

A state statute requiring all corporations incorporated under the laws of the state, with certain specified exceptions, to pay an annual license fee or franchise tax of one-tenth of 1 per cent. of all amounts of capital stock issued and outstanding, etc., was not a tax on the corporation's franchise or property, but an imposition which corporations subsequently organized contracted by their charters to pay.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Licenses, § 47.]

5. SAME—STATE BOARD—ASSESSMENT—REVIEW.

Where an imposition by a state on a corporation organized under its laws was not a tax, but a mere liability created by the corporation's charter, the assessment of the state board did not constitute a quasi judicial act, preventing a court of bankruptcy from considering the contract between the state and the corporation, to determine the measure of its liability.

6. SAME.

Where a corporation was under a contract liability to pay to the state under whose laws it was incorporated one-tenth of 1 per cent. of all amounts of capital stock issued and outstanding on January 1st of each year, and the corporation on January 1, 1902, had stock issued and outstanding to the amount of $10,000,000, it was liable on that amount, though the stock was reduced to $2,500,000 on May 13, 1902, prior to the maturity of the corporation's obligation to pay.

7. SAME—INTEREST.

Where a corporation was bound to pay to the state by which it was incorporated one-tenth of 1 per cent. on its outstanding capital stock on January 1st of each year, to be paid on or before July 1st, the amount

due on stock outstanding on January 1st did not constitute a matured claim on which suit could be brought until July 1st, and therefore did not bear interest before that date.

## Appeal from the District Court of the United States for the Northern Division of the Northern District of Illinois.

The Cosmopolitan Power Company was organized under the incorporation laws of New Jersey on April 30, 1900, for an unlimited period, to make and deal in engines, machines, materials, and merchandise of all kinds, anywhere within the United States and its territories and possessions. The company's seat of operations and all of its tangible property were in Illinois. Its authorized capital stock was $40,000,000. The amount thereof issued and outstanding on January 1, 1902, was $10,000,000. On May 13, 1902, the company duly reduced its capital stock to $2,500,000, all of which was then and thereafter outstanding.

The company was adjudged a bankrupt on a petition filed April 23, 1903.

New Jersey filed a claim, and thereafter asked for an order that the trustee pay it in advance of any dividend to creditors, under section 64a (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), as follows:

| | |
|---|---:|
| Tax 1902 | $5,750 00 |
| Interest to October 15, 1903 | 891 25 |
| Costs on injunction proceedings because of nonpayments of taxes (begun in August, 1903) | 26 15 |
| Tax 1903 | 2,500 00 |
| Interest to October 15, 1903 | 87 50 |
| Total | $9,254 90 |

Section 64a reads: "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality, in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax, the same shall be heard and determined by the court."

A statute of New Jersey (Gen. St. 1895, p. 3335, §§ 251, 252, 257, 258, 260) entitled "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof," which was in force when the bankrupt was incorporated, provided that "all corporations * * * shall make annual return to the State Board of Assessors on or before the first Tuesday of May in each year, * * * and shall pay an annual license fee or franchise tax of $1/10$ of one per centum of all amounts of capital stock issued and outstanding on January 1 of such year up to and including the sum of three million dollars," on any amount in excess of three million, not exceeding five million dollars, $1/20$ of one per centum, and on any further excess $50 per million or any part thereof; that the state board shall fix the amount of the "annual license fee or franchise tax" in case the corporation fails to make its return; that on or before the first Monday in June the state board shall report to the Comptroller the basis and amount of such tax, which "shall thereupon become due and payable and it shall be the duty of the State Treasurer to receive the same"; that "such tax, when determined, shall be a debt due from such company to the state"; that, if the tax remains unpaid on July 1st, it shall thenceforth, until paid, bear interest at the rate of 1 per centum a month, and the state thereupon may maintain an action at law for its recovery; that "such tax shall also be a preferred debt in case of insolvency"; that, if any tax remains in arrears for three months, the state may apply for an injunction to restrain the company from exercising its franchises; and that, if any company is delinquent for two years, its charter shall be void, unless further time be given for the payment of such taxes.

New Jersey's Constitution (article 4, § 7, subd. 12) requires that "property shall be assessed for taxes under general laws by uniform rules according to its true value."

The referee and the court denied priority, but allowed a reduced amount, $4,943.08, as a general claim.

Appellant contends that the court erred in refusing to direct the trustee to pay the claim as taxes, in reducing the amount claimed for 1902, and in rejecting the amount claimed for 1903.

Appellee denies the merits of all of these contentions, but insists that on this appeal the question of priority cannot be considered.

Levy Mayer, for appellant.
Fred D. Silbur, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). 1. As more than $500 of appellant's claim was disallowed, an appeal under section 25a (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]) is undoubtedly proper. In re Friend, Moss & Morris (C. C. A.) 134 Fed. 778. The case being here on appeal respecting the amount of the claim, we think appellant may also present any question concerning the security or rank of the debt, as an incident thereof (Cunningham v. German Ins. Co., 103 Fed. 932, 43 C. C. A. 377), though the question of lien or priority, if alone involved, could be reviewed only under section 24b (In re Rouse, Hazard & Co., 91 Fed. 100, 33 C. C. A. 356). If the case of In re Worcester County, 102 Fed. 808, 42 C. C. A. 637, is to be construed as requiring us to split the case and dismiss the portion that affects priority, we are not disposed, as now advised, to follow it.

2. Appellant argues that her highest court has decided that the charge is a tax, and that the decision is controlling here. The argument is founded on the case of Hancock v. Singer Mfg. Co., 62 N. J. Law, 289, 41 Atl. 846, 42 L. R. A. 852, decided November 14, 1898. Appellee contends with equal earnestness that the later case of In re United States Car Co., 60 N. J. Eq. 514, 43 Atl. 673, decided July 7, 1899, holds that the charge is not a tax. In Re Mutual Mercantile Agency, 8 Am. Bankr. Rep. 435, the referee relied on the Singer Co. Case, without noting the Car Co. Case, and directed the trustee to pay New Jersey a claim like this as taxes under section 64a. In Re Danville Rolling Mill Co. (D. C.) 121 Fed. 432, the District Court relied on the Car Co. Case, without noting the Singer Co. Case, and refused to order the payment of New Jersey's claim as taxes.

Long before the passage of the act for an "annual license fee or franchise tax," the Singer Company had been granted by New Jersey a charter which provided that upon certain conditions "the real and personal property of the said corporation not actually and in fact within the state of New Jersey, and the stock of the said corporation held or owned by any of its stockholders, shall not be liable to any tax or impost whatsoever." The state undertook to collect from the Singer Company an "annual license fee or franchise tax." In Singer Mfg. Co. v. Heppenheimer, 58 N. J. Law, 634, 34 Atl. 1061, 32 L. R. A. 643, the attempt was defeated. In the second Singer Co. Case, relied on by appellant, the first decision was adhered to. The rationale, it seems to us, is this: The

state could collect nothing on account of franchises except (either or both) compensation for granting them, or taxes upon their value as property after they had been granted. The consideration for the Singer Company charter was determined upon when the charter was granted. The contract in that respect could not thereafter be impaired by the state. Therefore, if the statute is to be construed as an attempt of the state to exact further compensation for the pre-existing franchises of the Singer Company, it cannot be given effect. The franchises to be and to do, when granted, became property, which was subject to be taxed as other property, unless the state had lawfully bargained away or limited its right. The state had agreed not to tax the company's property which was outside of the state. It was contemplated in the charter that the company should, and it did in fact, own tangible property and exercise its franchises beyond the state's lines. Therefore, if the statute is to be construed as an attempt of the state to tax so much of the franchise values as lie outside of the state, it would be an impairment of the contract. The expressions in the opinion that the "license fee" is a "tax" must be read, we think, in the light of the fact that the court was dealing with a charter with relation to which the statute was subsequent legislation. Carroll v. Lessee of Carroll, 16 How. 275, 286, 14 L. Ed. 936.

In the Car Co. Case, supra, the corporation, to judge from the decision, was organized under the general laws of New Jersey after the statute relating to the so-called "annual license fee or franchise tax" was in force. The corporation was decreed to be insolvent, receivers were appointed, and thereafter the State Board of Assessors returned to the Comptroller an assessment of the "annual license fee or franchise tax." The trial court, interpreting the statutory charge as a tax upon the corporate franchises, and finding that the franchises were valueless and had not been exercised by the receivers, held that the tax was not payable out of the funds in the receivers' hands until after all indebtedness existing at the time of their appointment was discharged. The reviewing tribunal, not denying the justness of the trial court's application of the statute to the facts, if its interpretation of the statute was correct, said:

"We cannot concur in this view. Although the statute designates an imposition of this kind as a license fee or franchise tax, it plainly is not a tax upon corporate franchises. In fact, it is not, strictly speaking, a tax at all, nor has it the elements of one. It is in reality an arbitrary imposition laid upon the corporation, without regard to the value of its property or of its franchises, and without regard to whether it exercises the latter, or not, solely as a condition of its continued existence. The state, in creating a corporation, has the right to impose upon its creature such conditions as the Legislature, within constitutional limits, may deem proper; and the acceptance by the corporation of the franchises, powers, and privileges conferred upon it binds it to the performance of those conditions so long as it continues to remain in possession of those franchises, powers, and privileges, and the conditions themselves remain unrevoked by the Legislature."

We are of the opinion that the foregoing excerpt is not a mere dictum, but that, on the contrary, it is the court's determination of the essential nature of the statutory imposition, properly given in

deciding the question presented. If so, the case may be accepted as controlling, because it is not for the United States bankruptcy courts to insist upon a state's receiving as a tax under section 64a something which the state declares is not. In re Ott (D. C.) 95 Fed. 274.

But if we are mistaken, and if the Singer Co. Case is to be accepted as an authoritative assertion that the charge in question is a tax, we do not believe that the United States bankruptcy courts are bound to follow it blindly. The question with them is the interpretation and application of section 64a. If the Legislature of a state gives the name "tax" to an exaction which is not a tax, and if the courts of the state join in the misnomer, surely the bankruptcy courts are not required to disregard the substance of the thing, to the detriment of other claimants. The state courts may authoritatively expound the substance, and the federal courts will adopt such exposition; but whether the substance constitutes a tax or not is independent of the name. And moreover the latter part of section 64a seems to direct the bankruptcy courts to determine independently the "legality of any such tax."

If it be conceded that the word "taxes," in section 64a, includes every contribution to the support of government which any state may exact from the persons, occupations, and possessions of its citizens and corporate subjects, is the charge in question a tax? It is not a capitation tax, for it is not laid upon corporations by the head. It is not an occupation tax, for it has no regard to the business in which the corporations engage. It is not a property tax, for it pays no heed to the extent or value of property, as the state Constitution requires. Franchises are property. The franchise to be and the franchise to do both go wherever the corporation goes. Both are property. Adams Express Co. v. Ohio, 166 U. S. 185, 224, 17 Sup. Ct. 604, 41 L. Ed. 965. A state may grant franchises, and then tax them as property, just as it may grant or lease land, and then tax the granted estate as property. But the tax upon the estate is not to be confused with the consideration for the grant. If one pays a lump sum or annual sums as the consideration for the grant, he does so by virtue of a contract; but he is not thereby relieved from the sovereign demand, in invitum. And that is the distinguishing feature of a tax. The sovereign does not bargain with his subject; he commands. The statute here under consideration does not purport to be an amendment of the incorporation laws of the state. But when the incorporators of the bankrupt came to seek a charter, this statute expressed one of the terms on which it could be obtained and held. The sovereign state could not command the incorporators to accept a charter. It could only say, "If you do accept it, you must pay so and so for the grant."

3. When the bankrupt failed to make its return for 1902, the state board, assuming that the authorized capital stock of $40,000,000 was issued and outstanding on January 1, 1902, fixed the amount of the charge at $5,750. The referee and the court reduced this

to $4,250, the amount properly chargeable to a capital stock, of $10,000,000 issued and outstanding. Appellant insists that the action of the state board was quasi judicial and is not subject to collateral attack. This contention would require consideration if the charge were a tax. Holding it to be a liability under a contract, we find no error in the court's looking to the contract for the measure of the liability. Whether, as appellee urges, the court erred in allowing any sum whatever for 1902, cannot be reviewed, as no cross-appeal was taken.

4. As to the $2,500 item, the question is whether it was a debt owing on April 23, 1903, when the petition was filed. The promise of the bankrupt, as we construe it, was to pay on or before the 1st of July in each year a sum based on the amount of stock issued and outstanding on the 1st day of January of that year. On January 1, 1902, the amount of stock issued and outstanding was $10,000,000. That determined the amount, even though the stock was reduced to $2,500,000 on May 13, 1902, long before the obligation matured and could be sued upon. Prior to January 1, 1903, the promise to pay on or before July 1, 1903, did not evidence an accrued debt, because it could not be known whether any stock would be outstanding when the 1st of January should come around. But on that date we think the promise accrued to pay one-tenth of one per centum on $2,500,000 of stock then outstanding. That the claim bore no interest and could not be sued upon before the 1st of July affects only the maturity of the obligation.

The District Court is directed to add to its allowance of a general claim the sum of $2,500, less a rebate of interest at 1 per cent. a month from July 1, 1903, back to April 23, 1903. In other respects the decree is affirmed. Costs here to be divided equally.