## In re GOULD MFG. CO.

District Court, E. D. Wisconsin.
June 12, 1935.

Thompson, Gruenewald & Frye, of Oshkosh, Wis., for trustee in bankruptcy.

Lewis C. Magnusen, City Atty., and Charles F. Nolan, Special Counsel, both of Oshkosh, Wis., for City of Oshkosh.

R. C. Laus, Dist. Atty., of Oshkosh, Wis., for Winnebago County.

GEIGER, District Judge.

In these bankruptcy proceedings the respondent Breon became trustee in April, 1933. The taxes for the years 1930, 1931, and 1932 had been returned as delinquent. The tax for the year 1933 was assessed but not paid, and also returned as delinquent. All of such taxes were levied upon assessments which were made—it is not denied—conformably with the state law. The taxes (except for the year 1934) and assessments for the respective years are:

| | Tax | Assessment |
|---|---|---|
| 1930 | $3564.60 | $137,500 |
| 1931 | 3016.20 | 137,500 |
| 1932 | 2517.65 | 117,500 |
| 1933 | 2806.50 | 93,900 |
| 1934 (tax rate not fixed at time of hearing this matter) | | 66,350 |

Upon petition of the trustee the property of the bankrupt was authorized to be sold free and clear of incumbrances, including tax liens. Such petition averred that: "The overhead of carrying the property, including watchmen, insurance, fuel, repairs, etc. will shortly eat up all the value of the property over and above taxes which are unpaid for approximately three years, and are a lien on said premises." And in the order authorizing such sale, the cash avails were directed to be used "to pay the expense of said sale, and to redeem the land, buildings, ventilating, sprinkling and heating systems sold at said public auction from the taxes now a lien and incumbrance thereon."

Thereupon, a sale by the trustee was held, upon which he realized an amount sufficient to pay or redeem taxes, but which he now holds; and when claim was made by the city and county for the payment of such taxes, the trustee filed objections to the allowance of the taxes for the years and upon the assessments hereinbefore set out, "for the reason that the assessments for each and all of said years are excessive, and largely in excess of the actual value for said respective years, and that the amount of taxes claimed is excessive and does not represent the correct tax due from the bankrupt."

Such "objection" after alleging the assessed values of the land and improvements, hereinbefore noted, continues: "That the actual value of such land and improvements so assessed did not exceed for each of the years 1930, 1931, 1932, $30,000, and for the year 1933, $20,000." And by way of comparison of the "assessed" with "true and actual" values for the years mentioned, the objections and the petition next to be referred to, set forth, in substance, the indicated excess, and also the amount of tax allowable upon the indicated "actual values":

| Year | Assessment | Tax | Trustee's revaluation | Excess | Reduced tax |
|---|---|---|---|---|---|
| 1930 | $139,175 | $3564.60 | $30,000 | $109,175 | $780 |
| 1931 | 139,175 | 3016.20 | 30,000 | 109,175 | 663 |
| 1932 | 119,175 | 2517.65 | 30,000 | 89,175 | 645 |
| 1933 | 95,225 | 2806.50 | 20,000 | 75,225 | 600 |
| | | 11904.95 | | | 2688 |

The trustee concludes by objecting "to the allowance of any and all claims for taxes for said years * * * in excess of the amounts above set forth or in excess of the total amount of $2688.00."

Immediately following the making of claim for taxes, and the above objections thereto, the trustee filed a petition reiterating his objection and averring:

"That your petitioner is of the opinion that the amounts of the taxes so assessed are excessive and should be reduced.

"Your petitioner further alleges that the tax rate for the year 1934 has not at this time been determined, but that the assessed value of the land and buildings of the bankrupt have been determined at the amounts set forth on the schedule hereto attached, marked Exhibit 'C' and made a part hereof. That such assessed values are excessive and should be reduced."

The trustee prayed: "That these matters may be heard and the correct amount of the taxes to be allowed and ordered paid may be determined and that the taxes and assessments for the respective years may be reduced in accordance herewith."

Upon such objections and the petition filed by the trustee, the referee directed the tax claimants to show cause why the matter should not be heard and determined. Whereupon, the county of Winnebago and the city of Oshkosh, through counsel, respectively, appeared and objected to the jurisdiction of the bankruptcy court to entertain the application as one for a reduction of taxes. The matter was heard by the referee, and a considerable amount of testimony was taken principally upon the value of the property of the bankrupt during the several tax years under consideration,

to wit, 1930 to 1934, inclusive. The testimony given in support of the petition consisted of that given by the trustee himself, and that given by another witness, both of whom professed to express opinions on value for the respective years, viz.:

For the years 1930, 1931, 1932, $30,000.

For the years 1933, 1934, $20,000.

It will be noted that such valuations cut down the assessments for the years 1930 and 1931 approximately $11/14$ and for the year 1932 approximately $3/4$; and the year 1933 approximately $3/4$ to $4/5$. Without attempting to summarize the testimony given by any of the parties, the values given on behalf of the trustee can find no support in the evidence (assuming either of the witnesses was qualified), excepting such as may be deduced from the fact or facts dealing with the decline of the bankrupt's business, its operating loss, and the like, for five or six years prior to bankruptcy. Much of the testimony offered on behalf of the city and county was directed to supporting the assessments as they and assessments of other like property were made from year to year by the assessors, and confirmation thereof by reviewing officials. Further reference to the testimony at this particular time is not necessary.

The referee overruled the objections to the jurisdiction, saying: "From these I determine that the bankruptcy court has absolute jurisdiction; that it is its duty to determine the question when presented; that it is not limited to the valuation placed on the property by the tax officers; that neither errors of law or fact on the part of local officers, nor negligence on the part of the taxpayers have any bearing upon the court's determination of the issue; that the bankruptcy court is not precluded from reducing the tax, although the bankrupt would be so precluded apart from the bankruptcy law; that any question which arises as to the amount, must be heard and determined by the Court with a view of ascertaining the amount really due; that the Court therefore is not precluded by the findings of the tax authorities; that the right of the bankruptcy court to determine the amount of all taxes cannot be thwarted or limited in any way by local statutes specifying the form and manner of filing tax returns or denying to tax payers all remedies for abatement and recovery of taxes improperly assessed unless such requirements are complied with."

He thereupon proceeded to a consideration and determination of the matter of value, and his observations are incorporated herein as showing his unwillingness to follow the testimony supportive of the trustee's petition respecting such values during the five years in question. The referee said:

"I will first determine the valuation of the property and the amount of the tax due thereon for the year 1934. The assessor placed a valuation of $67,735.00, the appraisal by the bankruptcy court amounted to $62,000.00, Mr. MacNichol, a realtor of this city, testified to a value of $20,000.00. The trustee was unable to dispose of the property at private sale, altho for a year and a half he made very strenuous efforts to do so and only obtained one offer of $25,000.00 which included some personal property and that offer was later withdrawn. In the Fall of 1934 the property was sold at public auction under charge of Michael Tauber and Company, who specialize in that kind of business and unusual publicity was given to the notice of the sale and a good attendance of prospective purchasers obtained and the real estate sold for the sum of $10,100.00, but from the property assessed there was reserved six lots which were assessed at the value of about $2000.00.

"No one on the part of the city, attempted to testify as to the market value of the property, but considered that equitably and taking into consideration other properties of the city, of similar kind, that the assessments were proper.

"In consideration of this question, many elements enter in and I am inclined to agree with Hamlet, that 'The times are out of joint.'

"I cannot bring myself to finding the amount of sale as the actual value for the purpose under consideration, altho this is properly to be considered and also the other testimony that I have referred to.

"I find that the value of said property so assessed for the year 1934 is $40,000.00.

"At no time since 1930 has there been an opportunity to sell this property at private sale and as the testimony of one witness is, this property during all that time has been a 'drug on the market,' so that the requirements of the Wisconsin Statute 70.32 would be very difficult to carry out or determine.

"I find, however, that there should be some increase in the value of the property for tax purposes for the preceding years and I find the value for 1933 to be $45,000.-00, for 1932, $50,000.00, for 1931, $55,-000.00, and 1930, $60,000.00 and on these valuations the amount of tax for 1930 is $1560.00, for 1931, $1210, 1932, $1075.00, 1933, $1350.00, 1934, $1152.00—total $6,347, which sum the Trustee is directed to pay with interest until time of payment on all the taxes so determined, except for the year 1934."

A discussion of the questions involved necessitates a reference to provisions of the Bankruptcy Law dealing with the status of taxes, and their payment, and what, if any, grant of power is made to the court respecting tax claims. The act (as amended) provides:

"Sec. 64. Debts which have priority. (a) The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality, in the order of priority as set forth in paragraph (b) hereof: Provided, That no order shall be made for the payment of a tax assessed against real estate of a bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court. Upon filing the receipts of the proper public officers for such payments the trustee shall be credited with the amounts thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court.

"(b) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payments shall be * * * (6) taxes payable under paragraph (a) hereof." 11 USCA § 104.

"Sec. 17. Debts not affected by a discharge. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (first) are due as a tax levied by the United States, the State, county, district, or municipality in which he resides." 11 USCA § 35.

As bearing pertinently upon a consideration both of the power claimed on behalf of the bankruptcy court and of the evidence that has been introduced in support of the trustee's petition herein, a provision of the Wisconsin law (referred to by the referee) dealing with the assessment of taxes is:

"70.32: Real estate, how valued. (1) Real property shall be valued by the assessor from actual view or from the *best information that the assessor can practicably obtain,* at the full value *which could ordinarily be obtained therefor at private sale.* * * *

"(2) The assessor, having fixed a value, shall enter the same opposite the proper tract or lot in the assessment roll, following the instructions prescribed therein. In cities and villages, he shall segregate into the following classes on the basis of use and set down separately in proper columns the values of the land, exclusive of improvements, and the improvements in each class:

"A. Residential,

"B. Mercantile,

"C. Manufacturing,

"D. Agricultural." (Italics supplied.)

Certain general considerations may preface a discussion of the subject-matter presented on this review. Taxes, whether they be called "debts," or "claims," or whether the sovereignty be treated as a creditor, in a popular sense, do not belong in the class of "creditors" for or against whom bankruptcy is ordinarily administered. The sovereignties on whose behalf tax claims are assertable are not "parties" to bankruptcy proceedings in the ordinary sense. Taxes are sovereign impositions, not filed as claims for "debts," but to which functionaries who administer bankrupts' estates are bound to give heed as preferentially assertable against property in their hands, or against bankrupts.

Now, I believe it may be said, broadly speaking, that taxes—except when challenged for illegality because of a want of power to levy, or in respect of a failure to pursue indispensable steps of procedure in assessing and levying—are incontestable. That is to say, the initial steps of appraising the subject-matter of a tax are committed to what may be called assessing functionaries; and the extent to which their action is subject to executive, quasi-legislative, or judicial review has always been quite limited, but also quite clearly defined. Boards of reviews are generally regarded as having true revisory powers entitling them to go into the real field of estimating, appraising, and the like, to reach a result

that may be in affirmation, or revision, or correction, of or upon, initial assessments. The situation wherein judicial review to reach the whole, or a particular item of a tax based upon a charge of illegality, or a loss of jurisdiction by the assessing functionary, are clearly understood in their limitations. Therefore, when an initial assessing functionary, upon ample evidence, makes a determination within the powers granted . by law, his or its judgment and discretion thereon, honestly exercised, is not subject to *substitution* or mere *revision* by any *judicial tribunal.* What is meant is that, ordinarily, judgments of assessors, upon appraisement or assessment of values, are not subject to revisory judgments of courts. They are not subject to judicial power to apply either the same rule, or, optionally, a different rule with a resultant, in whole or in part, to substitute the application judicially to the same subject-matter, which was actually or potentially before the initial statutory assessing, or the statutory reviewing, functionary.

It is evident that the contention made before the referee, and adopted by him, is that. the Bankruptcy Act contains a grant of full power to revise taxes. And the matter may be tested out in view of the free concession on behalf of the trustee that all of the taxes which have been made the subject of revision, as against the bankrupt, or rather as between the bankrupt and the particular taxing sovereignty, at the time of bankruptcy, had become, and now are, incontestable; that the taxes assessed against the bankrupt estate, while in the hands of the trustee, are not open to contest—unless power is reserved in the federal court.

The foregoing is deemed pertinent in trying to approach—in the light of probabilities—a consideration of the power to revise taxes, and whether the statute clearly evinces a legislative intent to so endow the bankruptcy court. Matters of common and settled experience in the assessment and levy of taxes, and the uniform insistence, both in the states and in the nation, upon certainty of imposition and inescapability of obligation to pay, alone raise the serious question whether in the Bankruptcy Act there is any expression of purpose to permit the courts, which cannot discharge a tax and are bound to pay it in full, if legal, nevertheless to revise, mitigate, or wipe it out. More importantly, whether the bankruptcy courts have been empowered to so deal with taxes which, at the time of bankruptcy, had been, and in the proceedings must still be, conceded to be taxes "legally due and owing by him" (the bankrupt), and as such entitled to preferential recognition. As hereinbefore indicated, the trustee is contending that the bankruptcy courts are so endowed, and, as the referee indicates, the power may be exercised upon evidence and upon considerations which may not reach, much less disparage, the assessments and the taxes which, as between the bankrupt and the tax sovereignty, were legally due and owing by him, and, as hereinafter noted, within the duty of the trustee to pay.

■ Section 64 of the Bankruptcy Act, hereinbefore cited, is rather clearly interpretable as containing:

First. An imposition of the duty of the trustee to pay preferentially and in full the taxes "legally due and owing *by the bankrupt.*"

Second. A proviso containing a *prohibition* upon the bankruptcy court, viz., that "no order shall be made for the payment of a tax assessed against real estate of a bankrupt in *excess* of the *value of the interest of the bankrupt estate therein* as determined by the court."

Third. A direction for crediting the trustee with the amounts paid, evidenced by tax receipts; and "in case *any question* arises as to the *amount* or *legality* of any such tax the same shall be heard and determined by the court."

Accepting, therefore, the first of the above elements as imposing the duty of the trustee to pay such taxes as are due and owing by the bankrupt, it is obvious that the legislative intent was limited to the duty of paying, preferentially, the *legal due* of the *bankrupt* in respect thereof. The limitation, it may be suggested, was hardly necessary, if it be assumed that no one would contemplate the payment of *illegal taxes.* It may fairly be assumed that objection to the legality of a tax sought to be imposed against an estate could, if made timely, be raised as well by a trustee of the bankrupt as by the latter. But the important point upon this phase of the statute is that it contains no grant of power to *revise* taxes.

■ Coming to the second element of the section, it is a proviso, or a prohibition, whose purpose is entirely clear. Whether there be discussion as to the prohibition

being merely against the *excess* of the tax, or against the payment of any such tax at all, its purpose is to prevent the use of estate funds for the preferential payment of tax obligations burdening property worth less than the amount of tax; wherefore creditors cannot be benefited. The simple question, why pay taxes on property worth less than the amount of the tax? may be thus answered, that the payment is of no benefit to, in fact a diminution of, the estate. Plainly, in the narrow situation thus presented, the "value of the interest of the bankrupt estate" must be determined by the bankrupt court; and, if determined, the prohibition, in case the value is less than the tax, becomes self-executing. In such event, the plain implication is that the property be disclaimed or abandoned. Here, again, there is no suggestion of a grant of power to *revise or reduce taxes.*

The third element of this section (or the second element of the proviso) is administrative, directing the credit to be given to the trustee in accord with tax receipts given upon payment; but it contains the further clause: "In case *any question* arises as to the *amount* or *legality* of any *such tax* the same shall be heard and determined by the court."

In the matter before us, the language last above quoted is relied upon by the trustee as evidencing a grant of power pursuant to which the assessment and the taxes levied in the present case were overthrown.

It ought to be accepted as the legislative purpose that the trustee should pay preferentially and in full taxes "legally due and owing by the bankrupt" upon such tests of legality as must have been applied by the bankrupt in case there had been no bankruptcy. In other words, it could not be within the contemplation of Congress that the federal courts must respect the obligation of the bankrupt as indicated in the first portion of section 64, and at the same time reserve to themselves the power to consider "legality" upon tests not at all dependent upon the law of the taxing sovereignty. This is true, not only of municipal and state, but also of national taxes. It cannot be that the bankruptcy court was endowed with a power to acknowledge validity and legality of imposition as against the bankrupt, as tested by the law of the taxing sovereignty, and at the same time revise the impositions upon general notions of greater fairness, merely be-

cause of the advent of bankruptcy. Therefore, when it comes to an interpretation of the third element of section 64 (or the second element of the proviso), it would be anomalous to ascribe to the Legislature a purpose to so seriously modify the first element imposing the duty and the second element imposing a prohibition against all payment in case of deficiency of value of the interest of the bankrupt, by granting full power over "the amount" of taxes and over "*any* question that may arise." The difficulty with the trustee's position is in its assumption respecting the range of "questions." Obviously, every attack on "legality" must involve, in whole or in part, an attack on "amount"; but conversely, the "amount" of a tax may not be *legally* "questioned" merely because deemed too high, or because an assessor's judgment on values may be shown to have been optimistic. It cannot be that, considering a tax, even upon the theory of the trustee in this case, the federal court could free itself from every test which the law of the taxing sovereignty provides for assessment and levy, or the settled law respecting "questioning" either of them. Indeed, the record in this case, and particularly the memorandum of the referee, indicates that an attempt was made to disprove the assessments because of a failure to follow the Wisconsin statute above cited. But, oddly enough, it was conceived that relief to the trustee was grantable by merely attacking the assessor's valuation and, if successful, still applying the same rate.

If this thought be further particularized, then the bankruptcy court could revise or reduce a particular assessment, for example, within any range, as in this case, five-sixths; or, as an alternative, an assessment could be allowed to stand, and, as a means of revising the tax, merely reduce the rate. Although this illustration may be extreme, there is no reason why, if the power exists, it cannot be so exercised. As heretofore indicated, all this bears most pertinently upon the probability of any legislative intent or purpose to endow the bankruptcy court with a power of such character and scope, and to do so by language entirely consistent with a power to deal only with legality to be determined upon principles which are not at all dependent upon, or involving, a consideration of the effect and the fact of bankruptcy. As has been seen, this matter proceeded and was determined wholly upon the theory that the section in question contains

650

an express grant of power to the court "although the bankrupt would be precluded apart from the bankruptcy law"; that the court is not precluded by the findings of the tax authorities; that "the right of the bankruptcy courts to determine the *amount* of all taxes cannot be thwarted or limited in any way by local statutes supplying the form or manner of filing tax returns, or denying to taxpayers all remedies for abatement and recovery of taxes improperly assessed, unless such requirements are complied with." (Italics supplied. See referee's opinion.)

Manifestly, this doctrine of a power of such character gives to tax claims against bankrupt estates *no,* or at most only a mild *prima facie,* validity. This is true no matter how frequently or how formally the bankrupt may have acknowledged them as legally due from him; or how effectively, or for how many years he may have barred himself from contesting taxes not of themselves illegal, but subject to just review and revision, pursuant to statutory provisions, if timely invoked. I assume (though without examination of the record) that in these bankruptcy proceedings the Gould Manufacturing Company probably scheduled its taxes for the years of their delinquency. It is significant that in income tax returns in evidence, such real estate and other taxes were *affirmed* as deductible items against gross income; and, as testing out the cogency of any opinion evidence given by a real estate agent or by the trustee herein upon the value of the bankrupt's plant and real estate in the successive years in question, the bankrupt's own statements of value are suprisingly in accord, if not in excess of, the assessments and valuation of the taxing authorities.

Thus, the very language of section 64, imposing upon bankrupt estates the duty to pay *"all* taxes *legally due and owing by the bankrupt;"* to the United States, to a state, county, or municipality, at once prompts the query, "legally due and owing" with reference to *what power of imposition?* Can it be that *no* tax is to be regarded as legally due and owing until the bankruptcy court puts upon it a stamp of "legality" which may not, or need not, respect such tests as must be put upon it by the law of the particular taxing sovereignty? Does it mean such revisory stamp as the bankruptcy court, without reference to *any* test of "legality" may put upon it so as to reflect a sort of just emergency tax, reduced or revised, because of bankruptcy? If a state assessor's valuation of real estate or other property, which valuation has been placed or is capable of being placed thereon in part by the taxpayer's own assertions, as found in his books, may be broken down or revised merely because of post factum bankruptcy, and a bankruptcy court is permitted to scale down values during three or four years of delinquency, obviously the same can be done with income, license, or all other taxes whose admeasurement so frequently depends upon factors involving "value," either for the purpose of applying a ratio, or as a deduction for or against other factors. I am entirely mindful that the contention for the trustee embodies this extremity—it being even urged that courts have this power, have exercised it, and may exercise it "ruthlessly."

What was done in this case, and the foregoing illustrations and analogies, are all given particular notice because it is confidently believed that no such power has ever been exercised to revise taxes without regard to tests of legality, as prescribed by the law of the taxing sovereignty. While numerous cases have been cited, the statute, upon my examination of the citations, has never been applied in exercise of an authority to revise by way of reassessment taxes *legally due and owing by the bankrupt.* The writer ventures to observe that in his, and in the referee's much longer, respective incumbencies as administrators of the present bankruptcy law, the possession of such power by the court hitherto has never been asserted or even suggested. It may be added that not only in this, but in every jurisdiction charged with the administration of the national act during its thirty-seven years of life, preferential payment of taxes according to the obligation at their foundation, viz., the law of the sovereignty imposing them, has been universally recognized. The importance of such recognition rests in this: Taxes, whether with or without specific liens, whether inside or outside of bankruptcy proceedings, whether characterized popularly as "high" or "low," are, because of sovereign preferential obligation, usually regarded as at least burdensome. They are so regarded by creditors in the administration of insolvency laws. Therefore, if the power, again characterized as one to revise or reassess taxes, had been open to clear recognition during all these years, its

exercise would have been of the commonest development in the great majority of matters coming into the bankruptcy court. The conceived necessity of relieving bankrupt estates (as in the case before us) from an accumulation of delinquent taxes (which the bankrupt could not contest) would not only prompt an appeal to the power, but also its rather liberal exercise, in the light of asserted destruction of "values" *through a bankruptcy*. The exercise of such power for the sheer purpose of scaling down preferential obligations in the interest of unsecured creditors would have become commonplace. Recent amendments to the Bankruptcy Act (for particular example, section 77B [11 USCA § 207]) have brought to the attention of the court the astounding delinquencies in taxes. And no one has suggested that in any of these proceedings the heavy burden of dealing with such obligations is coupled with a mitigating power of revision through the effective means of reassessing "values" or of altering rates.

The foregoing discussion, as has been indicated, is directed to a consideration of probabilities of a legislative intent or purpose to vest the bankruptcy court with the power sought to be invoked by the trustee in this matter. The assessment and levy of taxes, that is, the taking of various steps, beginning with a valuation of subject-matter down to carrying it into amounts to be levied, either against persons or against property, is not widely variant throughout state and national taxing jurisdictions or tribunals. And it is my judgment that there is the inherent quality of excluding possibility of revision or review by judicial tribunals upon considerations which fall short of "breaking down," as it is commonly termed, the jurisdiction or lawful exercise of the taxing power. It is entirely clear that what was done herein, under the petition filed by the trustee, is not an overthrowal of the state assessment and levy upon discernible grounds of illegality. It is believed that the same facts and the same testimony (assuming that the latter was all properly received) which were before the referee can be assumed to have been actually or potentially before the assessor and the reviewing board; and yet the assessment and levy of the latter are sustainable upon *ample* evidence. That is to say, if the somewhat extravagant testimony of the trustee and the real estate agent (I believe it to be incompetent) had been before the assessor and the reviewing board, it could have been rejected—just as the referee rejected it. Indeed, the record and the referee's memorandum demonstrate that, upon this record, (full competency being given to all of the testimony), the referee was, and the court now is, confronted merely with the same problem, and its perplexities, that confronted the state assessing authorities. Nothing further need be said upon this, however, than by reference to the local assessments, say in 1930, approximately $137,000, the bankruptcy court appraisal in 1933 of approximately $62,000, the testimony of two witnesses that in 1930 the property was worth $30,000, and the referee's finding of value in 1930 of approximately $60,000. Therefore, it is said that the conclusion reached upon the trustee's petition herein is nothing more nor less than an attempted revision of the assessor's judgment on values, a re-arbitration, so to speak, or an attempt to draw variant, possible inferences in an identical evidentiary situation. Stating the matter somewhat differently, it cannot be asserted upon the record that variant conclusions may not be reached. If the so-called opinion evidence is accepted and allowed to dominate the conclusion reached by an assessor four years prior thereto, the latter may appear exceedingly high. But if the bankrupt's own assertion of value, and the assessor's act presumably (if not concededly unimpeachable as against the bankrupt), are given the fair weight to which they are entitled, the opinion evidence may disclose ridiculously low valuation. And, as noted, the referee's conclusion upon this testimony is in effect its complete rejection. If, as is suggested, the problem arising under the Wisconsin statute respecting assessments (section 70.32, Wisconsin Statutes, supra) is difficult of solution, it is just as difficult for the bankruptcy court as for the assessor, and the former can hardly resort to guides, not within the reach of the assessor, or such as *he*, the assessor, was *not bound* to follow. The discussion inevitably recurs to the proposition respecting the unassailable character of assessments, except upon the ground of "illegality." "Legality," it is again said, *conditions liability* to pay at all, and to pay preferentially. It is not sufficient that a judicial tribunal may consider the matter and reach a conclusion which may be "fairer" than that reached by the tax authorities. "Illegality" involves the necessity of excluding the tax assessment and levy, in whole or in part, upon every hy-

pothesis of reasonable inference and judgment.

It is said with some confidence that a careful examination of adjudicated cases fails to disclose a single one wherein the doctrine invoked by the trustee has been recognized and applied in a situation where, as here, the concession must be made that, as between the bankrupt and the taxing sovereignties—and also between the bankrupt estate and the taxing sovereignty—the assessments and levy reflect "taxes legally due and owing." It will suffice to consider the one case most strongly relied upon by the trustee, and accepted by the referee as supporting the claim that the broad power characterized by the referee in his memorandum was granted by section 64A.

New Jersey v. Anderson, 203 U. S. 483, 27 S. Ct. 137, 51 L. Ed. 284, deals with a tax claim made by the state of New Jersey against the estate of a bankrupt corporation organized under its laws. Bankruptcy proceedings arose in the Northern District of Illinois. The claim was based upon a statute of New Jersey levying a corporation stock tax or license fee; and the charge was that the corporation had failed to pay the imposition called for by such statute. The questions that arose were:

(1) Is the capital stock imposition a "tax" within the meaning of the Bankruptcy Act?

(2) If so, is it assessable under the law of New Jersey upon the *authorized,* or only upon the *issued* and *outstanding,* stock?

(3) Respecting the time of accrual of liability to pay (this is of slight materiality herein).

The first of these questions had been answered in the negative by the lower court ([C. C. A.] 137 F. 858), and the Supreme Court in reversing such ruling announce the view that whether an imposition constituted a "tax," as that term is used in the bankruptcy direction for preferential allowance and payment, is a question quite within the exclusive power of the federal courts to determine. Upon referring to the prevailing and dissenting opinions, it is clear that the division arose, *not* upon the possession of the power of the federal tribunals to decide that question, but upon the merit of the contentions that the imposition was or was not a tax. The dissenting opinion, respecting such merit, says: "The word 'taxes' in the

bankruptcy act was intended to embrace only burdens or charges imposed in invitum, and which were within their nature and reality, 'taxes,' as distinguished from governmental exactions for privileges granted." 203 U. S. 483, at page 495, 27 S. Ct. 137, 141, 51 L. Ed. 284.

The point of the decision upon the first question disclosed in the syllabus is:

"While the state court may construe a statute and define its meaning it cannot conclusively determine that which is not a tax to be a tax within the meaning of a Federal statute; that is a Federal question of ultimate decision in this court.

"In this case this court reaches independently the same conclusion as that reached by the state court."

The language of the court's opinion is:

"The question is, Is the claim a tax *legally due and* owing to the state of New Jersey? We have been cited to many cases in the state of New Jersey, some of which, it is alleged, maintain the theory of the appellant that this is a tax, and some the contrary view.

"Without undertaking to analyze these numerous cases or to harmonize the views expressed by different judges, we think the weight of judicial decision in that state favors the view that this is a tax imposed upon the right of the corporation to continue to be a corporation, with power to exercise its corporate franchises, based upon the amount of its capital stock issued and outstanding." (Italics supplied.)

After a citation from a New Jersey case (Hancock v. Singer Mfg. Co., 62 N. J. Law, 289, 41 A. 846, 42 L. R. A. 852), the court continued: "While we take this view of the decisions of the supreme court of New Jersey, and reach the conclusion that the claim in question is for a tax within the meaning of the law as construed by that court, the bankruptcy act is a Federal statute, the ultimate interpretation of which is in the Federal courts. It is doubtless true, as was said in the opinion of the learned judge speaking for the circuit court of appeals, in this case, that if the highest court of the state should decide that a given statute imposed no tax within the meaning of the law as interpreted by it, a Federal court, in passing on the bankruptcy act [11 USCA § 1 et seq.] would not compel the state to accept a preference from the bankrupt's estate upon a different view of the law. Conceding the doctrine that

the meaning of a statute is a state question, except where rights, the subject of adjudication by the Federal courts, have accrued before its construction by the state court, or the question of contract within the protection of the Federal Constitution is involved, still a state court, while entitled to great consideration, cannot conclusively decide that to be a tax within the meaning of a Federal law providing for the payment of taxes, which is not so in fact. The section (64a [11 USCA § 104 (a)]) itself declares, that in case of disputes as to the amount or legality of any such tax, they shall be heard and determined by the court. The state court may construe a statute and define its meaning, but whether its construction creates a tax within the meaning of a Federal statute, giving a preference to taxes, is a Federal question, of ultimate decision in this court."

This decision is significant in dealing with the power of the bankruptcy court to pass upon questions of legality of taxes. It furnishes no support for the contention that, under the section, the broad power is conferred upon the bankruptcy court *to be its own assessor* of taxes. It most clearly points out the answer to the question hereinbefore propounded: "By what test or standard is the legality, (or amount, if legality of the whole or a part of a tax is involved) to be determined?" Upon each of the three questions before the court, the answer must be found (1) in the law of the taxing sovereignty as it may be declared either by the decision of a state court or of the courts of the United States; (2) that, in any event, a tax must conform with the national sovereignty's conception of a "tax" under section 64a; (3) that it must be in conformity with the United States Constitution in respect of contract and property rights.

In other words, there is no intimation in the opinion that under section 64a there is grant of power to question the amount of taxes without reference to "legality," as the latter must be tested under some law of the taxing sovereignty. True, the decision points out that for the purpose of ascertaining whether a tax is a legal due, the section contemplates that the federal court is the ultimate determiner.

But the case strikingly illustrates the fact that the court was concerned wholly with questions of legality. Such question arose initially respecting the law of New Jersey in fixing an imposition upon corporations; and the court held that under that law it was a tax within the meaning of section 64a. Upon the second question, very plainly, the matter of amount was involved because of the claimed illegality of the imposition as against unissued stock; and the court held that the latter was not legal subject-matter of a tax either under the New Jersey law, or possibly under the Constitution of the United States. Upon the third question, the Supreme Court significantly determined the time of accrual of the tax liability under the law of New Jersey.

The cases cited on behalf of the tax claimants are entirely in accord with the views hereinbefore expressed, respecting the true interpretation and scope of section 64a.

As hereinbefore indicated, it is believed that as between the federal and the state governments, the courts of each recognize the plenary power of the other to establish and enforce taxing systems and, with exceptions which go to legality, the range of disputation respecting matters of fact excludes possibility of mere "revision" or "reduction"—and section 64a contains no such power.

In reference to a suggestion by the trustee that the referee's findings of fact must be treated as unassailable, the situation does not permit such rule to be invoked. As has been shown, even if the issue tendered were illegality because of excessiveness, that issue, if triable at all, necessitated proof which would completely break down the state assessment. I am satisfied that the proof, to quite an extent, should have been rejected as incompetent, and for want of qualifications of the witnesses. When it is eliminated, there is nothing in the record which impugns the assessments.

The general conclusions are:

(1) That the referee should have sustained the objection to the jurisdiction;

(2) That the petition filed by the trustee is insufficient to raise any question respecting the legality of the taxes assessed against either the bankrupt or the bankrupt estate.

(3) That the proofs are insufficient to substantiate the objections interposed by the trustee to the payment of the taxes.

■ While the foregoing disposes of the matter, it is deemed proper to make an observation respecting the exercise of the

power to sell property of a bankrupt estate, free and clear from encumbrances. It is generally recognized that such power, assuming it to exist, should be exercised sparingly, and never unless, upon preliminary inquiry, the court is satisfied that there exists an equity over and above encumbrances which may be sold to the advantage of general creditors. Whether the bankruptcy court may exercise this power by recognizing lienholders as parties in interest, sell the property, and *then* contest the liens, is open to the gravest doubt. It is hardly consistent with fairness to give at least the implied recognition to the validity of the liens, and then, without disclosing such purpose, proceed later to contest them. That is particularly true where, as here, the power was invoked upon a petition expressly recognizing the tax liens, and invoking the power for *the purpose of redeeming them,* and where, in ordering the sale, the court gave directions to carry out that purpose.

An order may be entered reversing the ruling of the referee and remanding the matter with directions to overrule the objections to the tax claims; and to direct the trustee to pay the same.