**In re MYTINGER.**

No. 890.

District Court, N. D. Texas, Wichita Falls Division.

March 15, 1940.

H. E. Kleinecke, Jr., of Galveston, Tex., for the Trustee.

Hirschie Johnson, Asst. Atty. Gen., and Lee G. Williams, Atty. for Unemployment Commission, of Austin, Tex., for the claim.

ATWELL, District Judge.

The Texas Unemployment Compensation Commission filed two claims, one for the sum of $299.68, and the other for $368.21. It claimed prior payment under Section 64, sub. a (4), of the Bankruptcy Act, 11 U.S.

C.A. § 104, sub. a (4). The trustee objected, and the referee ruled with him.

The Section is as follows: "The debts to have priority * * * shall be * * * taxes legally due and owing by the bankrupt to the United States or any state or any subdivision thereof."

The unemployment compensation is provided for in Article 5221b—1 et seq., Vernon's Ann.Civ.St., Revised Statutes of the State of Texas. In that statute, the payments are denominated contributions. These contributions are not for the support of the state government. They are for the benefit of persons therein described. The inception of the Act was in 1936, and it has been amended by each succeeding legislature up to and including the Forty-Sixth Legislature, in 1939. It has a number of sections and covers twenty-eight pages. Its purpose is the relief of the workman who becomes unemployed, and the fund which is accumulated arises from exactions made upon the employer. This fund is deposited in the state treasury, and later is deposited with the Secretary of the United States Treasury, to the credit of the Texas Unemployment Trust Fund by virtue of Section 904 of the Social Security Act, 42 U.S.C.A. § 1104, and the United States pays the administrative expenses of each state. Title III, Social Security Act, 42 U.S.C.A. § 501 et seq.

The Texas Act provides that this fund is separate and apart from all public moneys, or, funds of the state, and shall be administered by a Commission which is therein provided for. The Commission is composed of three members; one of whom represents labor; one, the employer; and one, the public generally. These members are appointed by the governor. Provision is made that if, after due notice, any employer defaults in the payment of any contribution, penalty, or, interest thereon, the amount due shall be collected by civil action in the name of the state and the Attorney General, and the employer adjudged in default shall pay the costs of such action. Preference is given to such suits upon the calendar of the court over all other civil actions, except petitions for judicial review under the Act, and except cases arising under the Workmen's Compensation Law, Vernon's Ann.Civ.St.Tex. art. 8306 et seq.

Penalties are provided for, running from $25 to $500, against the employer who does not keep the required records, or, makes false reports, or, incomplete reports, or, who fails, or, refuses to abide by the provisions of the Act, or, by the rules and regulations promulgated under its authority, and each day constitutes a separate offense.

Such contributions, penalties, and interest due by any employer to the fund, shall become a lien upon all the property, both real and personal, of such employer, so used by such employer in performing, or, aiding in the performance of the service which his employees have contracted to perform on his behalf, and such lien shall attach at the time any contribution, or, penalty, or, interest becomes delinquent. Subdivision (f) of Art. 5221b—12.

Subdivision (i) of the same Article, and the same Section, provides that, in the event of a receivership, assignment, adjudicated insolvency, composition, or, similar proceedings, contributions then, or, thereafter due, shall be entitled to the same priority as is now accorded by the general laws of the state of Texas to *other tax claims*. Vernon's Ann.Civ.St.Tex. art. 5221b—12.

It is contended that the use of the word "contribution," in the Act, and the fact that such contributions are payable into a special fund for the use I have heretofore indicated, rather than into the general fund for the use of the state at large, show that such exactions are not taxes within the true definition of the word.

This construction is supported by In re Farrell, D. C., 211 F. 212. See, also, Mississippi Valley Trust Company v. Oregon-Washington Timber Company, D. C., 213 F. 988.

Cases such as In re Oshkosh Foundry Company, D. C., 28 F.Supp. 412; Carmichael v. Southern Coal & Coke Company, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327; Mountain Timber Company v. Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685, Ann.Cas. 1917D, 642, may be considered more liberal.

Generally speaking, a tax is a pecuniary burden laid upon individuals, or, property, to support the government. A payment exacted by legislative authority.

In New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, it was said that Section 64, sub. a, of the Bankruptcy Law, 11 U.S.C.A. § 104, sub. a, is very broad and covers all taxes.. In that case, it was also determined that while a state court may construe its own statute and define its meaning, it cannot conclu-

sively determine that which is not a tax to be a tax within the meaning of the federal statute. That is a federal question for ultimate decision in a national court.

One of the requisites of priority of Section 64, sub. a, is, that the tax shall be legally due and owing by the bankrupt to the United States, or, any state, or, any sub-division thereof. It seems to me that it would be squinting at words and refusing to recognize substance, to maintain that the unemployment fund is a side issue, unassisted by, or, uncontrolled by, or, not owing to the state. The very fountain head of the legislation is the state. The whole thing is done by the authority of state sovereignty. We have numerous instances in Texas of the collection of taxes for purposes other than the general benefit of the state, in the narrow sense. A state may raise funds by taxation for a public purpose, and such a purpose includes expenditures for its general welfare.

Here, the state, as a matter of public policy, determines that unemployment is inimical to the best interests of the people, and it devises this plan for the raising of a fund from its citizens. Relief of unemployment is a public purpose. The right of action to collect is given. A lien is fixed if not paid. Penalties are provided for the failure to observe the regulations of the Act.

It can hardly be said to be anything but action by the state.

That the state sees fit to set aside the funds so realized in order that further benefits may be secured from the national government, cannot be branded as a weakness in the fundamental involved in the Act.

An employer who goes into bankruptcy, leaving property against which there is a lien under this Act, must realize, as well as must all of his creditors realize, that a lien exists against that property for the benefit of those who formerly worked for him, and that in bankruptcy it has the priority given in the statute to taxes due the state.

We would hardly say that the amount is due to any subdivision of a state. The amount is due to the state. The fact that the state considers it appropriate to provide a different method for the expenditure of such fund, does not, in reality, distinguish it from funds that are exacted from the citizen for the benefit of other citizens, which are, at last, for the benefit of the state. A taxpayer may not resist payment of such a tax because it is called a contribution, or, because it is not expended for purposes which are peculiarly beneficial to him. The power of the state is back of its levy and collection.

The holding of the referee is reversed and priority will be allowed.