[No. 28457. Department Two. November 7, 1941.]

CHARLES F. ERNST, *as Director of the State Department of Social Security, Respondent,* v. WILLIAM HINGELEY, *Appellant,* MONTE CRISTO HOTEL CO., *Garnishee Defendant.*[1]

[1] Reported in 118 P. (2d) 795.

172

*Wright & Wright* (*Eugene A. Wright,* of counsel), for appellant.

*The Attorney General,* and *William J. Millard, Jr., Assistant* (*Lawrence W. Thayer,* of counsel), for respondent.

*Henry W. Parrott, amicus curiae.*

BEALS, J.—Prior to 1938, William Hingeley, the defendant in this action, was an employer of labor, and became indebted to the state of Washington in the sum of $343.62, for contributions under the state un-

employment compensation act. Plaintiff, Charles F. Ernst, as director of the Washington state department of social security, instituted suit against Mr. Hingeley, demanding judgment in the amount of the contributions due the state as aforesaid. Judgment in favor of the state was rendered by default April 22, 1938, the judgment including interest up to the date thereof, and providing that it should bear interest at the rate of one per cent per month until paid. Judgment for costs was also awarded against defendant.

December 11, 1938, William Hingeley was adjudged a bankrupt, the judgment above referred to being scheduled as one of his liabilities. The claim on the judgment filed in the bankruptcy proceedings was allowed, and January 30, 1939, Hingeley received his discharge in bankruptcy, no objections to his discharge having been interposed.

March 14, 1941, the state, as plaintiff in the action, caused a writ of garnishment to be served upon Monte Cristo Hotel Company, a corporation, Hingeley being then in the company's employ. The garnishee answered that it was indebted to Hingeley in the sum of $228.98.

At this stage of the proceedings, Mr. Hingeley appeared in the action, and moved to quash and abate the writ of garnishment, on the ground that the judgment upon which the writ was issued had been barred and liquidated by Hingeley's discharge in bankruptcy. The plaintiff appeared in answer to this motion, pleading affirmatively that the judgment against defendant Hingeley was based upon a claim for unpaid unemployment compensation contributions, and that such contributions were taxes and not dischargeable in bankruptcy. Hingeley answered the plaintiff's pleading, denying that contributions under the unemployment compensation act were taxes, again pleading his

discharge in bankruptcy in support of his challenge to the writ of garnishment.

The matter was submitted to the court, and after argument Mr. Hingeley's motion to quash and abate the writ was denied, and judgment was entered in plaintiff's favor against the Monte Cristo Hotel Company, upon its answer as garnishee, in the sum of $228.98.

From this judgment, William Hingeley has appealed, making several assignments of error, all of which present his contention that the judgment rendered against him and in favor of respondent had been discharged and liquidated by appellant's discharge in bankruptcy.

If, under chapter 162, Laws of 1937, p. 574 (Rem. Rev. Stat. (Sup.), § 9998-101 [P. C. § 6233-301] *et seq.*), the unemployment compensation act, contributions to the unemployment compensation fund are taxes, then the discharge which appellant received under the national bankruptcy act would not relieve him from liability upon a judgment entered on account of such unpaid contributions for which he was liable under the act. If, on the other hand, such contributions under the act are not taxes, within the meaning of the Federal bankruptcy act, appellant's discharge in bankruptcy would operate to liquidate and discharge any claim for such contributions on the part of the state, whether the claim had been reduced to judgment or not.

Section 17 of the Federal bankruptcy act (11 U. S. C. A., § 35) reads in part as follows:

"a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are due as a tax levied by the United States, or any State, county, district, or municipality. . . ."

The following portion of 11 U. S. C. A. § 104 reads:

"a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be . . . (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof. . . ."

The pertinent portions of chapter 162, Laws of 1937, read in part as follows:

"Sec. 7. (a) *Payment.*—

"(1) On and after January 1, 1937, contributions shall accrue and become payable by each employer.

"(b) *Rate of Contribution.*—Each employer shall pay contributions equal to the following percentages of wages payable by him with respect to employment."

Section 9 establishes a special fund separate from all public moneys or funds, designated an unemployment compensation fund, to be administered by the commissioner exclusively, the fund to consist of all contributions collected under the act. The act then requires that employers make, from time to time, contributions computed on the basis of wages paid, the amount of the respective contributions to be determined upon an estimate of the unemployment hazard in the particular industry. The statute also provided that the unemployment compensation fund should be separate from all other public funds, and administered by the commissioner as custodian.

Section 14(c) of the act reads as follows:

"(c) *Priorities Under Legal Dissolutions or Distributions.*—In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this state, including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition, or similar proceeding contributions then or thereafter due shall be paid in full prior to all other claims except taxes and claims for remuneration for services of not more than $250.00 to each claimant,

earned within six months of the commencement of the proceeding. In the event of an employer's adjudication in bankruptcy, judicially confirmed extension proposal, or composition, under the Federal Bankruptcy Act of 1898, as amended, contributions then or thereafter due shall be entitled to such priority as is provided in section 64 (b) of that act (U. S. C., title 11, section 104 (b)), as amended."

■ Whether or not an exaction on the part of the state, pursuant to a state statute, constitutes a tax within the meaning of the national bankruptcy act, is a question to be ultimately determined by the Federal courts.

In the case of *New Jersey v. Anderson,* 203 U. S. 483, 51 L. Ed. 284, 27 S. Ct. 137, the supreme court of the United States, in deciding whether or not a state corporation franchise tax was a tax within the meaning of the priority provision of the bankruptcy act, said:

"The state court may construe a statute and define its meaning, but whether its construction creates a tax, within the meaning of a Federal statute, giving a preference to taxes, is a Federal question, of ultimate decision in this court."

*In re Mid America Co.,* 31 F. Supp. 601, in determining whether contributions provided for under the Illinois unemployment compensation act were taxes within the meaning of § 64 (a) (4) and § 104 (a) (4), 11 U. S. C. A., the Federal bankruptcy act, which specifies those debts of the bankrupt which shall be paid in advance of the payment of dividends to creditors, such debts including taxes due from the bankrupt to the United States or any state or any subdivision thereof, the court said:

"The law is well settled that the determination whether a given statute imposes a tax within the meaning of the Federal Bankruptcy Act is a Federal question of ultimate decision in the Federal court. . . .

"Respondent in his brief contends at length that the enactment of the Illinois Unemployment Compensation Act was an exercise of the police power of the State of Illinois, and that it was not the intention of the General Assembly to create a tax; hence, that the contributions exacted pursuant to such act are not taxes, and therefore not entitled to priority in a bankruptcy proceeding. This position is not well taken. The word 'taxes' as used in Section 64, sub. a(4), quoted above, is not to be construed in a limited sense, but must be interpreted to include all types of involuntary exactions, regardless of name, levied by the Federal and State governments for governmental or public purposes, and it is immaterial which attribute of sovereignty, the police or taxing power, was employed in the imposition of such exactions."

In the case of *Carmichael v. Southern Coal & Coke Co.*, 301 U. S. 495, 81 L. Ed. 1245, 57 S. Ct. 868, the constitutionality of the unemployment compensation act of the state of Alabama was considered by the supreme court. The case reached the supreme court through the state courts, and, in upholding the constitutionality of the act, the supreme court of the United States, in discussing whether or not the contributions exacted under the act were taxes, said:

"In *Beeland Wholesale Co. v. Kaufman* [234 Ala. 249, 174 So. 516], the Supreme Court of Alabama held that the contributions which the statute exacts of employers are excise taxes laid in conformity to the constitution and laws of the state. While the particular name which a state court or legislature may give to a money payment commanded by its statute is not controlling here when its constitutionality is in question, . . . we see no reason to doubt that the present statute is an exertion of the taxing power of the state. . . .

"Taxes, which are but the means of distributing the burden of the cost of government, are commonly levied on property or its use, but they may likewise be laid on the exercise of personal rights and privileges. As has

been pointed out by the opinion in the *Chas. C. Steward Machine Co.* case [301 U. S. 548, 31 L. Ed. 1279, 57 S. Ct. 883], such levies, including taxes on the exercise of the right to employ or to be employed, were known in England and the Colonies before the adoption of the Constitution, and must be taken to be embraced within the wide range of choice of subjects of taxation, which was an attribute of the sovereign power of the states at the time of the adoption of the Constitution, and which was reserved to them by that instrument. As the present levy has all the indicia of a tax, and is of a type traditional in the history of Anglo-American legislation, it is within state taxing power, and it is immaterial whether it is called an excise or by another name. See *Barwise v. Shipard,* 299 U. S. 33, 36. Its validity under the Federal constitution is to be determined in the light of constitutional principles applicable to state taxation."

The district court, *In re Berkshire Hardware Co.,* 39 F. Supp. 663, in construing § 63 [11 U. S. C. A. § 103] (b), of the Federal bankruptcy act, considered the question of whether or not contributions required by the Massachusetts unemployment compensation law should be regarded as taxes. For purposes of priority of payment it was held that such contributions were taxes.

*In re Oshkosh Foundry Co.,* 28 F. Supp. 412, in deciding practically the same question considered in the cases last above cited, the court held that contributions under an unemployment compensation law were taxes.

Appellant argues that the cases above cited are not in point, because the questions considered involved the matter of priority of payment out of the bankrupt estate under § 64 [11 U. S. C. A. § 104] (a) (4), and did not concern the matter of debts due from the bankrupt not liquidated by a discharge in bankruptcy, as provided in § 17 of the bankruptcy act [11 U. S. C. A.

§ 35]. The question considered, however, is in essence the same as that here presented. If contributions under the unemployment compensation act are entitled to priority of payment because they are taxes due the state, it would seem that such contributions are also taxes within the provisions of the act governing the matter of the discharge of the bankrupt from his debts.

Appellant cites two decisions of this court (*State v. Postal Telegraph-Cable Co.*, 101 Wash. 630, 172 Pac. 902; *Nickell v. Department of Labor & Industries*, 164 Wash. 589, 3 P. (2d) 1005), in which this court expressed the view that moneys collected from employers under the workmen's compensation act were not taxes, appellant contending that contributions under the unemployment compensation statute are similar in nature to collections from employers under the workmen's compensation act. In neither of the cases cited was it necessary, for a decision of the question presented, to pass upon the question of whether or not the workmen's compensation act was a taxing statute.

The supreme court of the United States, in holding constitutional the workmen's compensation act of this state (Laws of 1911, chapter 74, p. 345, Rem. Rev. Stat., § 7673 [P. C. § 3468] *et seq.*), in the case of *Mountain Timber Co. v. State*, 243 U. S. 219, 61 L. Ed. 685, 37 S. Ct. 260, said:

"The fundamental purpose of the act is to abolish private rights of action for damages to employees in the hazardous industries (and in any other industry at the option of employer and employees), and to substitute a system of compensation to injured workmen and their dependents out of a public fund established and maintained by contributions required to be made by the employers in proportion to the hazard of each class of occupation. . . .

"It cannot be deemed arbitrary or unreasonable for the State, instead of imposing upon the particular employer entire responsibility for losses occurring in his

own plant or work, to impose the burden upon the industry through a system of occupation taxes limited to the actual losses occurring in the respective classes of occupation.

"The idea of special excise taxes for regulation and revenue proportioned to the special injury attributable to the activities taxed is not novel."

In the recent case of *State ex rel. Crabb v. Olinger*, 196 Wash. 308, 82 P. (2d) 865, the matter of whether or not exactions under the workmen's compensation act are taxes was discussed, and several of our prior decisions were referred to, the matter of the nature of payments made by employers under the act being mentioned but not directly determined. It would seem, however, that a majority of the court were of the opinion that payments by employers under the act at least partook of the nature of license taxes.

In this connection, appellant cites the cases of *In re Farrell*, 211 Fed. 212, and *Mississippi Valley Trust Co. v. Oregon-Washington Timber Co.*, 213 Fed. 988, in which it was held that collections under the workmen's compensation act of this state were not entitled to priority of payment from the estate of a bankrupt, as taxes due the state.

The two cases last cited were decided some years ago, and in the later Federal cases the courts generally have reached, in principle, a contrary conclusion. *In re Mytinger*, 31 F. Supp. 977, the district court held that contributions under the Texas unemployment compensation act were, as taxes, entitled to priority of payment within the Federal bankruptcy act. The court referred to the two district court cases above cited, construing the workmen's compensation act of this state, as contrary to the conclusion which the court reached in the *Mytinger* case, referring to other cases in which a contrary conclusion was reached, which latter group the court followed.

In view of the language of the supreme court of the United States in the case of *Mountain Timber Co. v. State, supra,* in which the supreme court expressed the opinion that payments exacted under our workmen's compensation act were occupation or license taxes, or at least partook of the nature of such taxes, and in the light of the decision of the supreme court in the case of *Carmichael v. Southern Coal & Coke Co., supra,* we are convinced that contributions exacted under the unemployment compensation act of this state must be held to be taxes, within the scope of the Federal bankruptcy act, and that the right of the state to collect such contributions is not affected by the contributor's discharge in bankruptcy.

We agree with Judge Duffy, presiding over the United States district court for the eastern district of Wisconsin, who, *In re Oshkosh Foundry Co., supra,* expressed the opinion that the word taxes, as contained in § 104 (a) of the Federal bankruptcy act governing priorities of payment, should not be construed in a narrow or restricted sense. The general purpose of the bankruptcy act is to give relief to unfortunate debtors, but at the same time, the purpose to preserve to the taxing authorities rights both as against the other creditors of the bankrupt and as against the bankrupt himself, clearly appears.

Appellant contends that § 14 (c), *supra,* of the act of 1937, shows that the act itself does not consider contributions made thereunder as taxes, and that such a legislative construction of the act should here control.

Appellant argues that the section gives the state a lien for contributions due it, prior to all other claims except taxes, thereby recognizing that contributions due under the act are not taxes. No question as to priorities is here presented, but we cannot follow ap-

pellant's argument that the section of the act quoted amounts to a binding legislative declaration that the contributions for employers therein provided for are not taxes. The section may well be construed as indicating that the legislature intended to classify the contributions as taxes, to enjoy a priority of payment with other taxes.

■ The fact that respondent had procured a judgment against appellant, based upon the contributions due, does not change the character of the obligation. *Guernsey-Newton Co. v. Napier,* 151 Wash. 318, 275 Pac. 724.

*In re Pulver,* 146 Wash. 597, 264 Pac. 406, this court said:

"We are of the opinion that we should look through the judgment to the record disclosing the issues of the case and the theory upon which it was tried, to determine the nature of the liability for which it was rendered, and thus determine whether or not that liability was discharged by the general discharge awarded by the Federal court."

■ Appellant argues that, because contributions under the unemployment compensation act are not paid into the state treasury, such contributions are not taxes. Art. VII, § 6 of the state constitution provides that "all taxes levied and collected for state purposes shall be paid in money only into the state treasury."

In the case of *State v. Sheppard,* 79 Wash. 328, 140 Pac. 332, in holding valid a peddlers' license act, this court said:

"The only taxes mentioned in article 7, or elsewhere in the constitution are property taxes, and from the reading of that article as a whole, we are of the opinion that the limitation here sought to be invoked is no more applicable to this tax than the equality rule is applicable to the inheritance tax. This tax, like the

inheritance tax, finds no mention in the constitution, and like the inheritance tax, is exacted by virtue of the inherent power of the legislature, unrestrained, we think, by any constitutional rule of the exercise of that power."

The language cited was quoted with approval in *Ajax v. Gregory,* 177 Wash. 465, 32 P. (2d) 560.

The trial court did not err in holding that the right to collect from appellant the contributions due from him under the unemployment compensation act was not barred by appellant's discharge in bankruptcy.

Appellant argues that in any event the trial court erred in allowing interest on the amount due, at the rate of one per cent per month. This matter was considered *In re Kallak,* 147 Fed. 276, the court determining that interest on taxes should be allowed up to the date of payment. The item now under consideration is not a penalty, but interest only. The court did not err in allowing interest on the unpaid taxes.

Judgment affirmed.

ROBINSON, C. J., BLAKE, SIMPSON, and JEFFERS, JJ., concur.